# CARDWELL, WARDEN v. LEWIS

No. 72–1603.  Argued March 18, 1974—Decided June 17, 1974.

584

BLACKMUN, J., announced the Court's judgment and delivered an opinion, in which BURGER, C. J., and WHITE and REHNQUIST, JJ., joined. Powell, J., filed an opinion concurring in the result, *post*, p. 596. STEWART, J., filed a dissenting opinion, in which DOUGLAS, BRENNAN, and MARSHALL, JJ., joined, *post*, p. 596.

*Leo J. Conway,* Assistant Attorney General of Ohio, argued the cause for petitioner. With him on the brief were *William J. Brown,* Attorney General, and *Nicholas R. Curci,* Assistant Attorney General.

*Bruce A. Campbell,* by appointment of the Court, 414

U. S. 1140, argued the cause and filed a brief for respondent.

*Andrew L. Frey* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Bork, Assistant Attorney General Petersen,* and *Edward R. Korman.*

MR. JUSTICE BLACKMUN announced the judgment of the Court and an opinion in which the CHIEF JUSTICE, MR. JUSTICE WHITE, and MR. JUSTICE REHNQUIST join.

This case presents the issue of the legality, under the Fourth and Fourteenth Amendments, of a warrantless seizure of an automobile and the examination of its exterior at a police impoundment area after the car had been removed from a public parking lot.

Evidence obtained upon this examination was introduced at the respondent's state court trial for first-degree murder. He was convicted. The Federal District Court, on a habeas corpus application, ruled that the examination was a search violative of the Fourth and Fourteenth Amendments. 354 F. Supp. 26 (SD Ohio 1972). The United States Court of Appeals for the Sixth Circuit affirmed. 476 F. 2d 467 (1973). We granted certiorari, 414 U. S. 1062 (1973), and now conclude that, under the circumstances of this case, there was no violation of the protection afforded by the Amendments.

## I

In 1968 respondent Arthur Ben Lewis, Jr., was tried and convicted by a jury in an Ohio state court for the first-degree murder of Paul Radcliffe. On appeal, the Supreme Court of Ohio affirmed the judgment of conviction. *State* v. *Lewis,* 22 Ohio St. 2d 125, 258 N. E. 2d 445 (1970). This Court denied review. *Lewis* v. *Ohio,* 400 U. S. 959 (1970).

On respondent's federal habeas application, the District Court, from the record and after an evidentiary hearing, adduced the following facts:

On the afternoon of July 19, 1967, Radcliffe's body was found near his car on the banks of the Olentangy River in Delaware County, Ohio. The car had gone over the embankment and had come to rest in brush. Radcliffe had died from shotgun wounds. Casts were made of tire tracks at the scene, and foreign paint scrapings were removed from the right rear fender of Radcliffe's automobile.

Within five days of Radcliffe's death, the investigation began to focus upon respondent Lewis. It was learned that Lewis knew Radcliffe. Lewis had been negotiating the sale of a business and had executed a contract of sale. The purchaser, Jack Smith, employed Radcliffe, an accountant, to examine Lewis' books. Police went to Lewis' place of business to question him and there observed the model and color of his car in the thought that it might have been used to push the Radcliffe vehicle over the embankment. Not until several months later, however, in late September, was Lewis again questioned. On October 9, he was asked to appear the next morning at the Office of the Division of Criminal Activities in Columbus for further interrogation.

On October 10, at 8 a. m., a warrant for respondent's arrest was obtained.[1] The District Court found that at

---

[1] The arrest warrant was obtained in Delaware County, where the crime was committed. The Activities Office is in adjacent Franklin County. In Ohio, an arrest warrant may be served in any county of the State. Ohio Rev. Code Ann. § 2941.36 (1953). In contrast, a search warrant in Ohio may be issued by a judge or magistrate only "within his jurisdiction." Ohio Rev. Code Ann. § 2933.21 (Supp. 1972). Thus, a search warrant obtained in Delaware County is not valid in Franklin County.

this time, in addition to probable cause for the arrest, the police also had probable cause to believe that Lewis' car was used in the commission of the crime. An automobile similar to his had been observed leaving the scene; the color of his vehicle was similar to the color of the paint scrapings from the victim's car; in a telephone call to Mrs. Smith, made by a person who said he was Radcliffe, but proved not to be,[2] the caller made statements that, if true, would benefit only Lewis; he had had body repair work done on the grille, hood, right front fender, and other parts of his car on the day following the crime; and the victim's desk calendar for the day of his death showed the notation, "Call Ben Lewis."[3]

Respondent Lewis complied with the request to appear. He drove his car to the Activities Office, placed it in a public commercial parking lot a half block away, and arrived shortly after 10 a. m. Although the police were in possession of the arrest warrant for the entire period that Lewis was present, he was not served with that warrant or arrested until late that afternoon, at approximately 5 p. m. Two hours earlier, Lewis had been permitted to call his lawyer, and two attorneys were present on his behalf in the office at the time of the formal arrest. Upon the arrest, Lewis' car keys and the parking lot claim check were released to the police. A tow truck

[2] The call was made at about 9:30 a. m. on July 19 by a man who identified himself to Mrs. Smith as Radcliffe and who stated that the books were in "A–1 condition." Mrs. Smith, who knew the victim, did not identify the caller as Radcliffe. Gunshots were heard between 8 a. m. and 8:30 a. m. that day by two women who lived near the site of the crime. It thus became clear that someone had impersonated Radcliffe in making the telephone call.

[3] The calendar's page for July 19 was missing. Investigation disclosed a writing indentation, on the next and underlying page for July 20, which indicated what had been written on the page for July 19.

was dispatched to remove the car from the parking lot to the police impoundment lot.

The impounded car was examined the next day by a technician from the Ohio Bureau of Criminal Investigation. The tread of its right rear tire was found to match the cast of a tire impression made at the scene of the crime.[4] The technician testified that, in his opinion, the foreign paint on the fender of Radcliffe's car was not different from the paint samples taken from respondent's vehicle, that is, there was no difference in color, texture, or order of layering of the paint.

The District Court concluded that the seizure and examination of Lewis' car were violative of the Fourth and Fourteenth Amendments, and that the evidence obtained therefrom should have been excluded at the state court trial. The court, accordingly, issued a writ of habeas corpus requiring the State to "initiate action for a new trial of" respondent within 90 days or, in the alternative, to release him. 354 F. Supp., at 44. The Court of Appeals, in affirming, held that the scraping of paint from the exterior of Lewis' car was in fact a search, within the meaning of the Fourth Amendment; that there was no consent to that search; that it was not incident to Lewis' arrest; and that the seizure of the car could not be justified on the ground that the vehicle was an instrumentality of the crime in plain view.

## II

This case is factually different from prior car search cases decided by this Court. The evidence with which we are concerned is not the product of a "search" that im-

---

[4] Apparently, the car's trunk was also opened and a tire in the trunk was observed. 354 F. Supp. 26, 33; 476 F. 2d 467, 468. No evidence obtained from any part of the interior of the vehicle, however, was introduced.

plicates traditional considerations of the owner's privacy interest. It consisted of paint scrapings from the *exterior* and an observation of the tread of a tire on an operative wheel. The issue, therefore, is whether the examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect. This is an issue this Court has not previously addressed.

The common-law notion that a warrant to search and seize is dependent upon the assertion of a superior government interest in property, see, *e. g., Entick* v. *Carrington,* 19 How. St. Tr. 1029, 1066 (1765), and the proposition that a warrant is valid "only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it," *Gouled* v. *United States,* 255 U. S. 298, 309 (1921), were explicitly rejected as controlling Fourth Amendment considerations in *Warden* v. *Hayden,* 387 U. S. 294, 302–306 (1967). Rather than property rights, the primary object of the Fourth Amendment was determined to be the protection of privacy. *Id.,* at 305–306. And it had been said earlier: "The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy." *Jones* v. *United States,* 357 U. S. 493, 498 (1958). See also *Schmerber* v. *California,* 384 U. S. 757, 769–770 (1966); *Katz* v. *United States,* 389 U. S. 347, 350 (1967); *United States* v. *Dionisio,* 410 U. S. 1, 14–15 (1973).

At least since *Carroll* v. *United States,* 267 U. S. 132 (1925), the Court has recognized a distinction between the warrantless search and seizure of automobiles or other movable vehicles, on the one hand, and the search of a home or office, on the other. Generally, less strin-

gent warrant requirements have been applied to vehicles. In *Chambers* v. *Maroney,* 399 U. S. 42, 49 (1970), the Court chronicled the development of car searches and seizures.[5] An underlying factor in the *Carroll-Chambers* line of decisions has been the exigent circumstances that exist in connection with movable vehicles. "[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable." *Chambers* v. *Maroney,* 399 U. S., at 50–51. This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened.

There is still another distinguishing factor. "The search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building." *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 279 (1973) (POWELL, J., concurring). One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view. See *People* v. *Case,* 220 Mich. 379, 388–

---

[5] The Court there discussed the following post-*Carroll* cases: *Husty* v. *United States,* 282 U. S. 694 (1931); *Scher* v. *United States,* 305 U. S. 251 (1938); *Brinegar* v. *United States,* 338 U. S. 160 (1949); *Preston* v. *United States,* 376 U. S. 364 (1964); *Cooper* v. *California,* 386 U. S. 58 (1967); *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216 (1968). Cases decided since *Chambers* and that now might be added to the list include *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971); *Almeida-Sanchez* v. *United States,* 413 U. S. 266 (1973); *Cady* v. *Dombrowski,* 413 U. S. 433 (1973). See also *Harris* v. *United States,* 390 U. S. 234 (1968); Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L. Rev. 835 (1974).

389, 190 N. W. 289, 292 (1922). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz* v. *United States,* 389 U. S., at 351; *United States* v. *Dionisio,* 410 U. S., at 14. This is not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion. But insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry.

In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence.[6] With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed.[7] Stated

---

[6] Petitioner contends that Lewis' car keys and the parking lot claim check were seized in plain view as an incident to his arrest, and that this seizure served to transfer constructive possession of the vehicle which could then be searched and seized as an instrumentality of the crime. We feel that the District Court and the Court of Appeals were correct in rejecting this argument. Irrespective of the plain-view or instrumentality analyses, the concept of constructive possession has not been found to justify the search or seizure of an item not in actual possession.

[7] As has been noted, the arrest was made at the Office of the Division of Criminal Activities; but the examination of the vehicle took place some time later at the police impoundment lot. This difference in time and place eliminates any search-incident-to-an-arrest contention.

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the

simply, the invasion of privacy, "if it can be said to exist, is abstract and theoretical." *Air Pollution Variance Board* v. *Western Alfalfa Corp.*, 416 U. S. 861, 865 (1974). Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments.[8]

Here, it has been established and is conceded that the police had probable cause to search Lewis' car. An automobile similar in color and model to his car had been seen leaving the scene of the crime. This similarity was corroborated by comparison of the paint scrapings taken from the victim's car with the color and paint of Lewis' automobile. Lewis had had repair work done on his car immediately following the death of the victim. And he had a nexus with Radcliffe on the day of death. All this provided reason to believe that the car was used in the commission of the crime for which Lewis was arrested. *Cooper* v. *California*, 386 U. S. 58, 61 (1967).

## III

Concluding, as we have, that the examination of the exterior of the vehicle upon probable cause was reason-

---

need to prevent the destruction. of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston* v. *United States*, 376 U. S. 364, 367 (1964). See also *Chambers* v. *Maroney*, 399 U. S. 42, 47 (1970).

[8] Again, we are not confronted with any issue as to the propriety of a search of a car's interior. "Neither *Carroll, supra*, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords." *Id.*, at 50.

able, we have yet to determine whether the prior impoundment of the automobile rendered that examination a violation of the Fourth and Fourteenth Amendments. We do not think that, because the police impounded the car prior to the examination, which they could have made on the spot, there is a constitutional barrier to the use of the evidence obtained thereby. Under the circumstances of this case, the seizure itself was not unreasonable.

Respondent asserts that this case is indistinguishable from *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971). We do not agree. The present case differs from *Coolidge* both in the scope of the search [9] and in the circumstances of the seizure. Since the Coolidge car was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property. Here, as in *Chambers* v. *Maroney,* 399 U. S. 42 (1970), the automobile was seized from a public place where access was not meaningfully restricted. This is, in fact, the ground upon which the *Coolidge* plurality opinion distinguished *Chambers,* 403 U. S., at 463 n. 20. See also *Cady* v. *Dombrowski,* 413 U. S. 433, 446–447 (1973).

In considering whether the lack of a warrant to seize a vehicle invalidates the otherwise legal examination of the car, *Chambers* is highly pertinent. In *Chambers,* four men in an automobile were arrested shortly after an armed robbery. The Court concluded that there was probable cause to arrest and probable cause to search the vehicle. The car was taken from the highway to

---

[9] *Coolidge* concerned a thorough and extensive search of the entire automobile including the interior from which, by vacuum sweepings, incriminating evidence was obtained. A search of that kind raises different and additional considerations not present in the examination of a tire on an operative wheel and in the taking of exterior paint samples from the vehicle in the present case for which there was no reasonable expectation of privacy.

the police station where, some time later, a search producing incriminating evidence, was conducted. We stated:

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

> ". . . The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U. S., at 52.

The fact that the car in *Chambers* was seized after being stopped on a highway, whereas Lewis' car was seized from a public parking lot, has little, if any, legal significance.[10] The same arguments and considerations of exigency, immobilization on the spot, and posting a

---

[10] Before the District Court, the State argued that Lewis had consented to the seizure of his car by requesting that the police impound it for safekeeping. The District Court stated:

"Viewing the evidence in the light most favorable to the State, petitioner [Lewis] did not clearly and unequivocally consent to the seizure and search of the automobile. The testimony . . . established, at most, that petitioner consented to their taking custody of the car for safekeeping. There is no evidence that petitioner consented, expressly or impliedly, to a seizure of the automobile for purposes of a search. . . ." 354 F. Supp., at 37–38.

Inasmuch as we hold the seizure to be justified under *Chambers,* we do not reach the issue of Lewis' consent.

guard obtain. In fact, because the interrogation session ended with awareness that Lewis had been arrested and that his car constituted incriminating evidence, the incentive and potential for the car's removal substantially increased. There was testimony at the federal hearing that Lewis asked one of his attorneys to see that his wife and family got the car, and that the attorney relinquished the keys to the police in order to avoid a physical confrontation. 354 F. Supp., at 33. In *Chambers*, all occupants of the car were in custody and there were no means of relating this fact or the location of the car (if it had not been impounded) to a friend or confederate. *Chambers* also stated that a search of the car on the spot was impractical because it was dark and the search could not be carefully executed. 399 U. S., at 52 n. 10. Here too, the seizure facilitated the type of close examination necessary.[11]

Respondent contends that here, unlike *Chambers*, probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances. Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. Cf. *Chambers, id.*, at 50–51. The exigency may arise at any time, and the fact that the police might have ob-

---

[11] To make a comparison with a paint scraping required that a section of the painted exterior that had not been recently repaired be sampled. This conceivably could necessitate several scrapings if the first sample was not conclusive after laboratory analysis. Similarly, to make a cast of the tire tread on the operative wheel would require laboratory equipment.

tained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.[12]

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

MR. JUSTICE POWELL, concurring in the result.

I would reverse the judgment of the Court of Appeals for the reasons set forth in my concurring opinion in *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 250 (1973). As stated therein, I would hold that "federal collateral review of a state prisoner's Fourth Amendment claims— claims which rarely bear on innocence—should be confined solely to the question of whether the petitioner [for habeas corpus] was provided a fair opportunity to raise and have adjudicated the question in state courts." *Ibid.* In this case there is no contention that respondent was denied a full and fair opportunity to litigate his claim in the state courts.

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE MARSHALL join, dissenting.

The most fundamental rule in this area of constitutional law is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States,* 389 U. S. 347, 357; *Coolidge* v. *New Hampshire,* 403 U. S. 443, 454– 455. See also *Camara* v. *Municipal Court,* 387 U. S. 523, 528–529. Since there was no warrant authorizing

---

[12] We do not address the question found to be determinative in MR. JUSTICE POWELL's opinion concurring in the result. This question was not raised or briefed by the parties.

the search and seizure in this case, and since none of the "specifically established and well-delineated exceptions" to the warrant requirement here existed, I am convinced the judgment of the Court of Appeals must be affirmed.[1]

In casting about for some way to avoid the impact of our previous decisions, the plurality opinion first suggests, *ante,* at 588–589, that no "search" really took place in this case, since all that the police did was to scrape paint from the respondent's car and make observations of its tires. Whatever merit this argument might possess in the abstract, it is irrelevant in the circumstances disclosed by this record. The argument is irrelevant for the simple reason that the police, before taking the paint scrapings and looking at the tires, first took possession of the car itself. The Fourth and Fourteenth Amendments protect against "unreasonable searches and *seizures,"* and there most assuredly was a seizure here.

The plurality opinion next seems to suggest that the basic constitutional rule can be overlooked in this case because the subject of the seizure was an automobile. It is true, of course, that a line of decisions, beginning with *Carroll* v. *United States,* 267 U. S. 132, have recognized a so-called "automobile exception" to the constitutional requirement of a warrant. But "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge, supra,* at 461–462. Rather, the *Carroll* doctrine simply recognizes the obvious—that a *moving* automobile on the open road presents a situation "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the

---

[1] This dissent is directed toward the search-and-seizure analysis in MR. JUSTICE BLACKMUN's plurality opinion. Like the plurality, I do not consider the issue raised by MR. JUSTICE POWELL's concurrence, it having been neither briefed nor argued by the parties.

warrant must be sought." *Carroll, supra,* at 153. See also *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 269. Where there is no reasonable likelihood that the automobile would or could be moved, the *Carroll* doctrine is simply inapplicable. See, *e. g., Coolidge, supra; Preston* v. *United States,* 376 U. S. 364.

The facts of this case make clear beyond peradventure that the "automobile exception" is not available to uphold the warrantless seizure of the respondent's car. Well before the time that the automobile was seized, the respondent—and the keys to his car—were securely within police custody. There was thus absolutely no likelihood that the respondent could have either moved the car or meddled with it during the time necessary to obtain a search warrant. And there was no realistic possibility that anyone else was in a position to do so either. I am at a loss, therefore, to understand the plurality opinion's conclusion, *ante,* at 595, that there was a "potential for the car's removal" during the period immediately preceding the car's seizure. The facts of record can only support a diametrically opposite conclusion.

Finally, the plurality opinion suggests that other "exigent circumstances" might have excused the failure of the police to procure a warrant. The opinion nowhere states what these mystical exigencies might have been, and counsel for the petitioner has not been so inventive as to suggest any.[2] Since the authorities had taken care to procure an arrest warrant even before the respondent

[2] Even the Solicitor General, who appeared as *amicus curiae* urging a reversal of the Court of Appeals' judgment in this case, has candidly admitted in his brief that "no satisfactory reason appears for the failure of the law enforcement officers to have obtained a warrant—there appears on the facts of this case to have been no real likelihood that respondent would have destroyed or concealed the evidence sought during the time required to seek and procure a warrant." Brief for United States as *Amicus Curiae* 4-5.

arrived for questioning, it can scarcely be said that probable cause was not discovered until so late a point in time as to prevent the obtaining of a warrant for seizure of the automobile. And, with the automobile effectively immobilized during the period of the respondent's interrogation, the fear that evidence might be destroyed was hardly an exigency, particularly when it is remembered that no such fear prompted a seizure during all the preceding months while the respondent, though under investigation, had been in full control of the car.[3] This is, quite simply, a case where no exigent circumstances existed.[4]

Until today it has been clear that "[n]either *Carroll* . . . nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords.". *Chambers* v. *Maroney,* 399 U. S. 42, 50. I would follow the settled constitutional law established in our decisions and affirm the judgment of the Court of Appeals.

---

[3] It can hardly be argued that the questioning of the respondent by the police for the first time alerted him to their intentions, thus suddenly providing him a motivation to remove the car from "official grasp." *Ante,* at 590, 595. Even putting to one side the question of how the respondent could have acted to destroy any evidence while he was in police custody, the fact is that he was fully aware of official suspicion during several months preceding the interrogation. He had been questioned on several occasions prior to his arrest, and he had been alerted on the day before the interrogation that the police wished to see him. Nonetheless, he voluntarily drove his car to Columbus to keep his appointment with the investigators.

[4] The plurality opinion correctly rejects, *ante,* at 591–592, n. 7, the petitioner's contention that the seizure here was incident to the arrest of the respondent. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston* v. *United States,* 376 U. S. 364, 367.