Ray Castanieda VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 50800.

Court of Criminal Appeals of Texas.

Jan. 21, 1976.

Rehearing Denied Feb. 11, 1976.

Ricky Smith, Lamesa, Court appointed, for appellant.

Joe Smith, Dist. Atty., Seminole, Jim D. Vollers, State's Atty., and David S. McAngus, Asst., State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; punishment was assessed by the jury at imprisonment for 99 years.

The appellant challenges the sufficiency of the evidence; he also asserts the trial

court erred (1) in overruling his motion to suppress evidence obtained by an alleged unlawful search and an alleged unlawful arrest; (2) by making an alleged improper reference to the indictment in the charge on guilt or innocence; and (3) in admitting photographs of the body of the deceased. We will first consider the sufficiency of the evidence.

At approximately 10:30 p. m. on February 4, 1975, the appellant, his brother Faustino Vasquez, Jr., and the deceased stopped at the Lamesa "66" Truck Stop south of Lamesa. Faustino attempted to cash a check, but the owner of the truck stop refused to accept the check. Two employees at the truck stop, both of whom knew the deceased, identified the appellant as one of the two men with the deceased; they also testified that the appellant and Faustino had been to the truck stop on the previous night in the same car to repair a flat tire.

Shortly before 11:00 p. m. on February 4, 1975, Deputy Sheriff Jim Nance, Charles Varner and Bruce Savage were patrolling the airport in Nance's patrol car. As they started to leave the airport, Nance noticed a car approaching the intersection at a high rate of speed; he backed up and waited for the car to approach. The car slowed as it neared and passed through the intersection. Nance recognized the car as a 1965 Dodge that he had owned and had sold a few weeks before. Nance followed the car and saw that there were two persons seated on the front seat; he could not identify either person but did note that the car pulled into a farmhouse where appellant's uncle lived.

Shortly after 11:00 p. m., Nance received a report from the police dispatcher that a body had been found in the road near the airport. Arriving at the scene where the body was reported, he found the nude body of the deceased; her clothes were found in an adjacent field. The deceased's feet were bound with a zipper torn from her clothes and her hands had apparently been bound in the same manner, but the latter binding

had broken loose. The deceased had been run over by a car; there were tire markings on her body. Deputy Nance was joined by Sheriff Kinnison and the two officers made plaster casts of the tire tracks leading to the body.

After leaving the location where the body had been discovered, Sheriff Kinnison, accompanied by Judge Nelson, a Dawson County Justice of the Peace, stopped at the Lamesa "66" Truck Stop for gas and while there learned that the deceased, the appellant and his brother had been in earlier that same evening in a car that matched the description of the one seen near the airport by Deputy Nance. It was learned from the man Nance had sold the car to that he had in turn sold it to Faustino Vasquez, Jr.

After a city policeman had taken Judge Nelson home, Sheriff Kinnison, Deputy Nance and Leroy Bowens, one of the Lamesa "66" Truck Stop employees who had earlier seen the deceased, the appellant and his brother together, proceeded to the home of the appellant's parents. The officers had neither a search warrant nor an arrest warrant when they arrived at the home of the appellant's parents. They stood in an alley adjacent to the backyard of the property and studied the automobile. Bowens identified the automobile as the same one he had seen earlier in the evening. From the alley the officers saw what appeared to be blood on the chrome stripping on the driver's side of the automobile and that both tires on the driver's side had been wiped with a circular motion.

The officers knocked at the door of the Vasquez home and asked to speak to the appellant and his brother; Mr. and Mrs. Vasquez invited the officers in. The appellant and his brother were then taken into custody for further investigation and interrogation. The officers subsequently returned and picked up the Dodge automobile from the Vasquez's house. What appeared to be mud, blood and hair was found stuck to a bolt underneath the automobile; vomit was found inside the right rear door.

Drawings made of the tire tracks at the scene of the commission of the offense matched the tires on the Vasquez automobile; the tires on the car also matched plaster casts made by Sheriff Kinnison and Deputy Sheriff Nance of the tracks leading to the body of the deceased.

Davis Legg, a chemist-toxicologist with the Department of Public Safety, testified that scrapings from three spots underneath the Vasquez car contained human blood, Type O; a blood sample from the deceased revealed that she had Type O blood. Legg further stated that a hair sample from the deceased was similar to that contained in two scrapings from the tailpipe clamp bolt and a front mount of the Vasquez car; he testified that in his opinion the hair samples could all have had a common origin.

The circumstantial evidence is sufficient to support the jury's verdict.

■ The appellant next contends that the search of the car conducted by the officers was unlawful and that the fruits thereof should have been suppressed. *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), involved circumstances much the same as those presented by the instant case. There, with probable cause and without a search warrant, officers took paint scrapings from the fender of the accused's impounded car; they also made comparisons between the tread on the car's tires and the cast of a tire impression made at the scene of the crime. The Court began by noting that there is a lesser expectation of privacy in an automobile:

> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." 94 S.Ct. 2464, at 2469.

However, it was also cautioned that:

> "This is not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion. But insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry." 94 S.Ct. 2464, at 2470.

After noting that nothing from the interior of the car had been searched or seized and introduced into evidence, the Court continued as follows:

> "With the 'search' limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed."

> *     *     *     *     *     *

> "Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments." 94 S.Ct. 2464, at 2470.

The appellant was observed at the Lamesa "66" Truck Stop in the company of the deceased shortly before her death; the car in the backyard of appellant's parent's home was identified as the same one in which the appellant and the deceased had been observed at the truck stop. The same car in which the appellant and deceased were observed at the truck stop was seen by Deputy Sheriff Nance in the vicinity of the commission of the offense shortly before the offense was reported; Deputy Nance further observed the car entering a farm on which appellant's uncle resided. From the alley behind the Vasquez home the officers observed what appeared to be blood and hair on the car and that the tires on the driver's side had been wiped with a circular cleaning motion. There existed probable cause to search the vehicle; in light of *Cardwell v. Lewis*, supra, the warrantless seizure and examination of the ex-

terior of the car were not improper and the fruits of that warrantless examination were properly admitted into evidence.

■ The only evidence produced from an examination of the car's interior was vomit on the inside of the right rear door. A picture of the vomit along with a picture of a like substance found near the body of the deceased were admitted into evidence; however, no chemical analysis or attempt to connect the two was made.

The evidence in the record before us points overwhelmingly to the guilt of the appellant. The error, if any, in the admission of the photographs of vomit, is relegated to the category of harmless error. This determination is made in light of all the admissible evidence. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). See also, *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45 (2d Cir. 1975); *Clay v. State*, 518 S.W.2d 550 (Tex. Cr.App.1975); *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.1974); *Hampton v. State*, 511 S.W.2d 1 (Tex.Cr.App.1974). This ground of error is overruled.

■ Appellant next asserts that his arrest was unlawful and that the fruits thereof should have been suppressed. Assuming arguendo that appellant's arrest was unlawful, we nonetheless find that a reversal of his conviction is not required. The inculpatory evidence which was admitted in evidence was not seized in a search incident to arrest; therefore, the illegality of appellant's arrest does not serve to taint the evidence. Since there were no fruits of the illegal arrest, the error does not require reversal of the conviction. *Stiggers v. State*, 506 S.W.2d 609 (Tex.Cr.App.1974); *Gross v. State*, 493 S.W.2d 791 (Tex.Cr.App. 1973); *Frazier v. State*, 481 S.W.2d 857 (Tex.Cr.App.1972); *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975), footnote # 4. This ground of error is overruled.

■ Appellant next contends that the trial court erred in "referring to the indictment in its charge to the jury in such a manner as to give evidential quality to the indictment." The jury was instructed that they must "believe from the evidence beyond a reasonable doubt" that the appellant committed the offense "as alleged in the indictment." The jury was further instructed that the indictment was not to be considered evidence of the appellant's guilt. The court did not err in submitting the case as he did. This ground of error is overruled.

■ Appellant lastly asserts that the trial court erred in admitting gruesome photographs of the deceased. These photographs were pertinent to the injuries suffered by the deceased and to a description of the place where the offense was committed. "So long as the pictures accurately represent what they purport to depict and are logically relevant, their gruesome and prejudicial character does not cause them to be inadmissible." *Brantley v. State*, 522 S.W.2d 519 (Tex.Cr.App.1975). See also, *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App. 1974); *Sloan v. State*, 515 S.W.2d 913 (Tex. Cr.App.1974); *Terry v. State*, 491 S.W.2d 161 (Tex.Cr.App.1873); *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972). This ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.