[No. A040338. First Dist., Div. Four. Apr. 20, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND E. ROBINSON, Defendant and Appellant.

[No. A042925. First Dist., Div. Four. Apr. 20, 1989.]

In re RAYMOND E. ROBINSON on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II-B, C, and D.

**COUNSEL**

William E. Rowen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.**—Following a jury trial, appellant Raymond E. Robinson was convicted of one count of receiving stolen property. (Pen. Code, § 496, subd. 1.) The court found allegations of two prior prison terms to be true. (*Id.,* § 667.5, subd. (b).) Appellant was sentenced to five years in state prison.

On appeal, Robinson contends that (1) paint samples scraped from his car were illegally seized without probable cause; (2) his *Miranda (Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights were violated; and (3) the information filed against him failed to give fair notice of the charge against him. Both in his appeal (No. A040338) and in a separate petition for writ of habeas corpus (No. A042925), he contends that the failure of his trial attorney to make a motion suppressing the paint scrape evidence constituted ineffective assistance of counsel.

## I. FACTS

On the afternoon of Wednesday, March 18, 1987, 16-year-old Cheryl Benoit parked her silver-gray 1976 Toyota Celica outside her family's home in Concord. The next morning, the car was missing.

On Saturday morning, March 21, police called to inform the Benoits that their car had been found at a shopping center about half a block from their home. Numerous parts were missing from the car, including the driver's door, hood, front bumper, grill, right and left fenders, an outside mirror, windshield wipers, gearshift console, and air conditioning and stereo components. Cheryl and her mother Evelyn noticed blue paint on the headlights and where the hood had been. The blue paint appeared to be overspray as if the missing parts had been painted before being removed.

On Sunday, March 22, Evelyn and Cheryl Benoit looked around their neighborhood for the missing parts. Approximately five blocks from their residence, they found a faded blue Toyota Celica with newly painted blue parts corresponding to several of the parts missing from their car. They summoned the police, and Officer Norman Woehrman responded.

At trial, Officer Woehrman testified that after observing the Benoit vehicle, he went to the address where they had seen the other Toyota Celica. He observed that the front of that car and the driver's door appeared freshly painted in medium blue while the rest of the car was a faded blue color.[1]

Officer Woehrman knocked on the door of the residence; eventually, appellant came to the door. The officer asked appellant if he owned the blue Toyota, and he replied he had owned it for three months. When asked about the repainted front end, appellant explained that the car had been struck in a restaurant parking lot a month before, the front fenders had been damaged, and that his mother had bought him new fenders which he then placed on his car and spray painted. Appellant stated that three or four days after the accident he reported the accident to the Concord Police Department.

Officer Woehrman and appellant then walked out to the car. The officer looked at the car more closely and, using a knife, he scraped portions of the blue paint from the driver's door, the two front fenders, and the hood. In each spot, he observed silver paint under the blue. Appellant stood nearby as Woehrman made these scrapings.[2]

---

[1] At a suppression hearing held out of the presence of the jury, the officer testified that at this time he also observed silver-gray paint under the blue paint on the driver's door.

[2] At the suppression hearing, Officer Woehrman testified that when he arrived at the scene, he made a routine call for a cover officer. The second officer arrived while Woehrman and ap-

At the suppression hearing, Officer Woehrman testified that as he was scraping the paint samples, he also looked inside the vehicle from the outside, and he could see numerous car parts within. He then asked appellant for his car keys, so he could check the interior color of the car door.

Before the jury, Officer Woehrman described his observations upon opening the car door. The inside of the driver's door was silver-gray, the same color as the Benoit car. A maintenance sticker inside the door indicated the car had last been serviced at 78,000 miles, while the speedometer on appellant's vehicle read 58,000 miles. Appellant's car had two dash pieces for a radio, while the dash piece in the victim's car was missing.

As he was removing the paint samples, the officer conversed with appellant. Originally, appellant had said the parts obtained from his mother were blue. When confronted with the silver underneath, appellant said, " 'Oh, yeah, they were silver.' " Asked again where he had obtained the parts, appellant now said they were given to him by the other person involved in the accident. Asked where he had worked on his car, appellant said some was done at home and some at a garage. When asked the location of the garage, appellant did not come up with an answer. At that point, Officer Woehrman had appellant's Toyota impounded.

Cheryl Benoit later inspected appellant's car at an impound garage. Through knowledge of scratches, dents and similar characteristics, she was able to specifically identify a gearshift console, windshield wiper, and a bumper as having come from her car.

A criminalist analyzed blue and gray paint samples from each car. He was unable to distinguish the gray paint from each car, indicating that the paint on each car could have come from the same batch of paint. There were "subtle but not significant differences" in the blue paint on each car.

Appellant, a twice-convicted felon, testified that in January 1987, his mother bought him a new fender which he installed on his car at that time. The accident in the restaurant parking lot took place in March. The other party, Earl Woods, told him that he could get new parts to replace the damaged parts of his car. Woods thereafter provided appellant with two fenders, a hood and a door. Appellant put the parts on his car and then painted them. He denied knowing that the parts were stolen. Appellant testified that he told Officer Woehrman only about the fender his mother

---

pellant were still talking at the door. Woehrman told the other officer that appellant "wasn't under arrest and he wasn't going to be arrested. I was still doing an investigation." The second officer stood nearby, approximately 10 or 15 feet away, while Woehrman scraped the paint.

had bought for him, because the officer had asked only if he had bought any parts lately.

Brad Lawing testified that he was present when appellant obtained the car parts at issue. He helped appellant in putting the parts onto appellant's car. Lawing acknowledged a prior burglary conviction and that he was currently confined in the cell adjacent to appellant.

## II. DISCUSSION

### A. Suppression of Paint Samples

Appellant first contends that the paint samples scraped from his car were illegally seized without probable cause. Alternatively, he contends that the failure of his trial attorney to make a motion to suppress the paint scrape evidence constituted ineffective assistance of counsel. The Attorney General, relying on *Cardwell* v. *Lewis* (1974) 417 U.S. 583 [41 L.Ed.2d 325, 94 S.Ct. 2464], responds that the scraping of the paint was not a search; that if it was a search, probable cause existed to take the paint samples; and that failure to move to suppress the paint samples did not constitute ineffective assistance of counsel. In his reply brief, appellant concedes that, based on *Cardwell,* police officers may scrape paint samples from a suspect's car without a search warrant, but only if there is probable cause to do so. He then maintains that the police in this case did not have probable cause.

■■■ Appellant first argues that although his car was located in a public place where Officer Woerhman had a right to be, the removal of paint samples from that car violated his reasonable expectation of privacy, and therefore probable cause was required. In support of this argument, however, he cites cases which did not involve motor vehicles. The United States Supreme Court has historically recognized a distinction between the warrantless search and seizure of vehicles, on the one hand, and the search of homes or offices on the other. (*Cardwell* v. *Lewis, supra,* 417 U.S. at p. 589 [41 L.Ed.2d at p. 334].) In *Cardwell,* for example, the Supreme Court stated: "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." (*Id.,* at p. 590 [41 L.Ed.2d at p. 335].)

In *Cardwell,* the defendant was asked to appear at the police station in connection with a murder investigation. Complying with the request, he parked his car at a nearby public parking lot. When the interview resulted

in his arrest, the car was impounded and brought to a police impoundment lot. The next day, a police technician observed the tire treads and took a paint sample from the vehicle to compare with tire marks at the scene of the crime and foreign paint on the victim's car. Finding a Fourth Amendment violation, a federal district court granted habeas corpus relief. The Court of Appeal affirmed, holding that the scraping of paint from the car exterior was a search within the meaning of the Fourth Amendment. (*Cardwell* v. *Lewis, supra,* 417 U.S. at pp. 586-588 [41 L.Ed.2d at pp. 332-334].) The Supreme Court reversed.

In *Cardwell,* a four-judge plurality[3] said: "In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the 'search' limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed. Stated simply, the invasion of privacy, 'if it can be said to exist, is abstract and theoretical.' [Citation omitted.]" (*Cardwell* v. *Lewis, supra,* 417 U.S. at pp. 591-592 [41 L.Ed.2d at pp. 335-336], fns. omitted; see also *People* v. *Teale* (1969) 70 Cal.2d 497, 504, fn. 4, 507-511 [75 Cal.Rptr. 172, 450 P.2d 564] [scientific examination of impounded vehicle, including traces of red paint in car, neither a search nor a seizure within meaning of Fourth Amendment].)

Professor Wayne R. La Fave, in analyzing the *Cardwell* decision, states that the plurality opinion appears to have concluded that the examination of the tires and the scraping of paint was not a search. (1 La Fave, Search and Seizure (2d ed. 1987) § 2.5, subd. (b), p. 448.) He then notes that *Cardwell* "can just as easily be read as saying that there was a reasonable search." (*Id.,* at p. 449, fn. 29.) Immediately following the language quoted above, the Supreme Court continued: "Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments." (*Cardwell* v. *Lewis, supra,* 417 U.S. at p. 592 [41 L.Ed.2d at p. 336], fn. omitted.) La Fave concludes: "This more cautious approach may have been taken so as to avoid the necessity of expressly concluding that the taking of a paint sample is within the 'plain view' concept." (1 La Fave, *supra,* at p. 449, fn. 29.)

---

[3] Justice Blackmun wrote the prevailing opinion, joined by three other justices. Justice Powell, relying on a procedural ground, concurred in the result. Justice Stewart, joined by three other justices, dissented on the merits. Thus, while there was a 5-4 vote in favor of the state agency that a grant of federal habeas corpus relief was improper, there was an equally divided 4-1-4 vote in terms of support for any opinion on the merits.

In his reply brief, appellant argues that because *Cardwell* is a plurality decision, there is no indication it represents the thinking of a majority of the United States Supreme Court. He concedes, however, that "probable cause certainly existed in *Cardwell,* and as Professor LaFave points out, the Supreme Court essentially held this was required."

■ We think it serves little purpose to speculate further as to what the *Cardwell* majority may have been thinking because, in any event, "under settled doctrine, the judgment of an equally divided United States Supreme Court 'is without force as precedent.' [Citation.]" (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 911 [103 Cal.Rptr. 897, 500 P.2d 1097] [4-1-4 split on opinion in support of judgment]; see also *North* v. *Superior Court* (1972) 8 Cal.3d 301, 308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155] [same]; *People* v. *Moore* (1975) 51 Cal.App.3d 610, 620 [124 Cal.Rptr. 290] [same, re *Cardwell*].) We prefer to take a fresh look at the issue in light of the specific facts of this case and more recent Fourth Amendment developments. ■ In determining the circumstances to which the federal exclusionary rule must be applied as a sanction in order to deter future unlawful conduct by police or other state agents, we look to decisions of the United States Supreme Court. (*In re Lance W.* (1985) 37 Cal.3d 873, 882 [210 Cal.Rptr. 631, 694 P.2d 744].)

At trial, there was testimony both by Officer Woehrman and the criminalist concerning the top layer of blue paint scraped from appellant's car as well as the underlying layer of silver-gray paint resembling that on the victim's car. ■ In a very practical sense, it would seem there was a "search" for the color of the underlying coat, accomplished, in part, by the "seizure" of the blue paint scraped away by the officer.[4] We find recent pronouncements by the United States Supreme Court as to what constitutes a "search" or a "seizure" bear this out.

■ "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." (*United States* v. *Jacobsen* (1984) 466 U.S. 109, 113 [80 L.Ed.2d 85, 94, 104 S.Ct. 1652], fn. omitted.) In *Arizona* v. *Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149], an officer, after lawfully entering an apartment under exigent circumstances, noticed expensive stereo equipment which seemed out of place in the "otherwise squalid apartment." (*Id.,* at p. 323 [94 L.Ed.2d at p. 353].) Suspecting the stereos were stolen, the officer read and recorded their serial numbers, moving some of the equipment in order to do so, which he then reported by phone to his headquarters. This evidence resulted in a robbery prosecution. (*Id.,* at pp. 323-324 [94 L.Ed.2d at p. 353].) The United States

---

[4]Conceptually, to the extent the officer could observe the silver-gray paint under the blue paint without any scraping (see fn. 1, *ante*), there was neither a search nor a seizure. That observation was in plain view of the officer.

Supreme Court held that "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." (*Id.,* at p. 328 [94 L.Ed.2d at p. 356].) But taking an action such as moving the stereo equipment which was unrelated to the objectives of the authorized intrusion into the apartment, "which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." (*Id.,* at p. 325 [94 L.Ed.2d at p. 354].) The court found that the moving of the stereo was a "search" requiring probable cause.

■ "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." (*United States* v. *Jacobsen, supra,* 466 U.S. at p. 113 [80 L.Ed.2d at p. 94], fn. omitted.) In its most recent pronouncement on the subject, the United States Supreme Court stated that: "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking [citations], but the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." (*Brower* v. *County of Inyo* (1989) 489 U.S. 593, __ [103 L.Ed.2d 628, 635, 109 S.Ct. 1378].)

■ In this case, we conclude that the officer's conduct in scraping off a layer of paint on appellant's car in order to observe the color of the underlying coat constituted both a "search" and a "seizure" within the meaning of the Fourth Amendment. By scraping off the blue paint, he engaged in an intentional act which had as its purpose the acquisition of physical control over that paint sample. (*Brower* v. *County of Inyo, supra,* 489 U.S. at p. __ [103 L.Ed.2d at p. 635].) Further, that act when done for the purpose of observing the underlying coat of paint involved more than "merely looking at what is already exposed to view, without disturbing it . . . ." (*Arizona* v. *Hicks, supra,* 480 U.S. at p. 328 [94 L.Ed.2d at p. 356].) In these circumstances, the officer was required to have probable cause before acting as he did.

Although no formal motion to suppress was made, the record in this case nevertheless clearly shows the officer had probable cause before he scraped any paint from appellant's vehicle. At the time of the paint scraping, the officer knew the parts that had been removed from the Benoit car, he knew that comparable parts with new paint were on appellant's car, he had already observed silver paint under the new blue paint of appellant's car, he knew there was blue overspray on the Benoit car, the inside of appellant's car door was silver-gray, the mileage on the maintenance sticker was higher

than was shown on appellant's speedometer, and appellant's car had two dash pieces for the radio while one was missing from the victim's car. In these circumstances, probable cause existed to justify taking of the paint samples. (See *Cardwell* v. *Lewis, supra,* 417 U.S. at p. 592 [41 L.Ed.2d at p. 336].)

It is of no constitutional significance that the paint was scraped when the car was parked in the street, while in *Cardwell* the paint was scraped from the car after it was in an impound lot. "We do not think that, because the police impounded the car prior to the examination, *which they could have made on the spot,* there is a constitutional barrier to the use of the evidence obtained thereby." (*Cardwell* v. *Lewis, supra,* 417 U.S. at p. 593 [41 L.Ed.2d at p. 336], italics added.)

■ Finally, as to appellant's claim of ineffective assistance of counsel due to his attorney's failure to raise this issue at trial, appellant must show both a deficient performance and prejudice. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698, 104 S.Ct. 2052]; see also *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) As any motion to suppress would have been futile for the reasons stated above, appellant's counsel was not ineffective for failing to raise this issue at trial.

II. B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . .

III. Conclusion

The judgment is affirmed (No. A040338). The petition for writ of habeas corpus is denied (No. A042925).

Poché, Acting P. J., and Perley, J., concurred.

---

*See footnote, *ante,* page 1047.