STATE of Minnesota, Appellant,

v.

Ralland Isadore KOLB, Respondent.

No. A03–931.

Court of Appeals of Minnesota.

Feb. 3, 2004.

Mike Hatch, Attorney General, Timothy Rank, Assistant Attorney General, St. Paul, MN; and Patrick W. Flanagan, Mower County Attorney, Eric V. Herendeen, Chief Deputy County Attorney, Austin, MN, for appellant.

Mary M. McMahon, McMahon & Associates Criminal Defense, Ltd., Roseville, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant State of Minnesota challenges a pretrial order issued by the district court that suppressed evidence found during the search of a vehicle driven by respondent Ralland Isadore Kolb and resulted in the dismissal of controlled substance charges against respondent. The state argues that the district court clearly erred in ruling that police, who ordered respondent's car towed because he did not have a valid license, needed reasonable, articulable suspicion of drug-related activity to conduct a dog sniff of the exterior of the vehicle after impoundment. Because police do not need reasonable, articulable suspicion to order a dog sniff of a lawfully impounded vehicle, we reverse and remand.

Because respondent is entitled to reasonable attorney fees and expenses when responding to a pretrial prosecution appeal, regardless of the outcome, and counsel's request is reasonable, we grant respondent's motion for attorney fees.

## FACTS

On November 24, 2002, Trooper Ryan Siegle of the Minnesota Highway Patrol, stopped respondent because the vehicle he was driving had very dark tinted windows, an equipment violation. Respondent admitted to the trooper that he did not have a license, and the trooper learned from dispatch that respondent's license was cancelled as inimical to public safety. The trooper arrested respondent, transported him to the Mower County Law Enforcement Center, and had the vehicle towed to the impound lot. The trooper later learned that the vehicle was registered to respondent's girlfriend.

The trooper testified that while driving to the jail, respondent went "from being angry to kind of happy to not caring about what was going to happen to him" and remained that way upon arrival at the jail. He stated that respondent seemed to care only about his car. Respondent asked when he could get his car, where it was going, and when his girlfriend could pick it up. The trooper testified that respondent's extreme concern about the car "raised some suspicions" that "there was something in the vehicle that [respondent] was worried about." The trooper did not observe any indicia of intoxication, such as the smell of alcohol, bloodshot or watery eyes, or dilated pupils; nor did the trooper suspect that respondent was under the

influence of any other controlled substance.

During the booking procedure, a woman entered the jail and identified herself as respondent's girlfriend. She asked about the car and a cell phone in the car, and whether she could take the car. She did not ask about respondent, what he was being charged with, or when he would be released.

At some point, another officer informed the trooper of respondent's possible prior involvement in drug activities. After respondent was booked, the trooper checked respondent's local criminal history, which showed a 1984 conviction for a controlled substance offense. The trooper was at the end of his shift and could not reach the chief deputy before he left to inquire about conducting a dog sniff of the vehicle that day.

When the trooper arrived at work the next day, he spoke to the chief deputy, explained his suspicions, and asked that a certified narcotics dog perform an exterior sniff of the car. No illegal substances had been found when a roadside cursory inventory search for large and personal effects had been performed. The chief deputy reported to the trooper that the dog "hit" on the driver's door of the vehicle. A search warrant was obtained based on the dog sniff, respondent's mood swings, his prior drug conviction, and his inquiries regarding the release of the car. Found in the lower pocket of the driver's door was some marijuana, a plastic bag of cocaine, and a plastic fuse box with dry hard rocks inside.

Respondent was charged with (1) first-degree possession with intent to distribute cocaine under Minn.Stat. § 152.021, subd. 2(1) (2002); (2) second-degree possession of controlled substance under Minn.Stat. § 152.022, subd. 2(1) (2002); and (3) gross misdemeanor driving after cancellation under Minn.Stat. § 171.24, subd 5 (2002). At an omnibus hearing, respondent moved to suppress the evidence found as a result of the dog sniff. The district court granted the motion and dismissed the controlled substance counts. The state appeals.

## ISSUE

Did the district court err in suppressing evidence obtained during the search of the vehicle?

## ANALYSIS

■■■ On appeal from a pretrial suppression order, the state "must 'clearly and unequivocally' show both that the [district] court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998) (citing *State v. Zanter,* 535 N.W.2d 624, 630 (Minn.1995)). "[T]he critical impact of the suppression must be first determined before deciding whether the suppression order was made in error." *Id.* "Critical impact has been shown not only in those cases where the lack of the suppressed evidence completely destroys the state's case, but also in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Kim,* 398 N.W.2d 544, 551 (Minn.1987). "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999).

Without the drug evidence obtained from the search of respondent's car pursuant to the warrant, the state would not have had any basis to charge him with

either of the controlled substance crimes. We therefore conclude that the suppression of the evidence has a critical impact on the state's ability to successfully prosecute respondent.

■ The state argues that the district court "incorrectly extended state and federal law to require law enforcement officers to have reasonable, articulable suspicion of drug-related criminal activity before a narcotics-detection dog sniff may be conducted around the exterior of a lawfully impounded vehicle."[1] The state argues that this standard is not required because "not even a minimal amount of intrusiveness occurs when the dog sniff is so far removed from the scene of the traffic stop and the defendant's presence." We agree.

■ Fourth Amendment concerns and privacy expectations surrounding an automobile are much less than those in a home. *Cardwell v. Lewis*, 417 U.S. 583, 589–90, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974). "[A]n exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." *City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S.Ct. 447, 453, 148 L.Ed.2d 333 (2000). A dog sniff around the exterior of a car is " 'much less intrusive than a typical search.' " *Id.* (quoting *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983)). Thus, the Minnesota Supreme Court has held that "a dog sniff around the exterior of a legitimately stopped motor vehicle is not a search requiring probable cause on the basis of either the Fourth Amendment or the Minnesota Constitu-

tion." *State v. Wiegand*, 645 N.W.2d 125, 133 (Minn.2002) (footnote omitted).

That holding, however, does not necessarily end the inquiry here. Noting that while a dog sniff around the exterior of a vehicle in a public place is not a search for purposes of the Fourth Amendment, the supreme court in *Wiegand* nevertheless held that this type of police activity was an investigatory procedure that required police to have a reasonable, articulable suspicion of drug-related criminal activity. *Id.* at 133–37. The *Wiegand* court reasoned that a dog sniff involves "some intrusion into privacy interests," and that an officer cannot conduct such a procedure around a vehicle "stopped for a routine equipment violation without some level of suspicion of illegal activity." *Id.* at 134. The court thus examined the scope of the initial stop and its duration, emphasizing that an " 'investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " *Id.* at 135 (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)).

In *Wiegand*, police initially pulled the defendant's vehicle over for a burned-out headlight. *Id.* at 128. They did not suspect that the driver was under the influence of any drugs, but merely believed that he was acting suspiciously. *Id.* While one officer issued a warning ticket for the equipment violation, another officer conducted a dog sniff around the exterior of the vehicle. *Id.* at 129. The duration of the stop was thus not at issue because the stop was not extended beyond the time necessary to issue a ticket for the equipment violation. *Id.* at 136. But because the officers were unable to articulate a reasonable suspicion of criminal activity,

---

1. Respondent does not challenge the legality of the initial stop here or the subsequent impoundment of the vehicle.

the supreme court concluded that they exceeded the scope of the initial investigatory stop. *Id.* at 136–37.

Similar to the defendant in *Wiegand,* respondent was initially stopped for an equipment violation. Unlike *Wiegand,* however, respondent was lawfully arrested soon after the stop when the trooper discovered respondent's license had been cancelled. The dog sniff did not take place until the next day, after the vehicle was legally impounded. Thus, neither the scope nor the duration of the initial stop was improperly expanded: the purpose of the initial stop was no longer implicated because respondent was lawfully arrested, and the stop ended long before the dog sniff took place.

In a case more similar to this one than *Wiegand,* the First Circuit held that a dog sniff around the exterior of a vehicle that was legitimately in police custody did not infringe upon any Fourth Amendment rights so as to require reasonable, articulable suspicion to conduct such a procedure. *United States v. Rodriguez–Morales,* 929 F.2d 780, 788 (1st Cir.1991), *cert denied,* 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). Relying heavily on the Supreme Court's decision in *Place,* 462 U.S. at 707, 103 S.Ct. at 2644, the First Circuit summarized: "So long as the automobile is lawfully impounded, the canine sniff test can be performed without any showing of reasonable suspicion." *Rodriguez–Morales,* 929 F.2d at 789. We find the First Circuit's holding persuasive and fully consistent with our supreme court's decision in *Wiegand.*

We therefore conclude that once a vehicle is lawfully impounded, police need not have reasonable, articulable suspicion of criminal activity in order to conduct a dog sniff of the exterior of the vehicle. Such police activity does not improperly expand or violate either the scope of duration of the initial stop. Thus, because the probable cause for the search warrant issued here was based on a lawfully conducted dog sniff, the district court erred in suppressing the drug evidence and dismissing the controlled substance charges against respondent.

Finally, respondent requests attorney fees on appeal. Under Minn. R.Crim. P. 28.04, subd. 2(6), when a defendant responds to a pretrial appeal by the prosecution, he is entitled to reasonable attorney fees and costs, regardless of the outcome. We conclude respondent's request for $1,965 in attorney fees is reasonable.

## DECISION

Police do not need reasonable, articulable suspicion to conduct a dog sniff of a lawfully impounded vehicle the day after a lawful investigatory stop. We therefore conclude that the district court erred in granting respondent's motion to suppress and reverse the district court's order dismissing counts 1 and 2. We conclude that respondent's request for attorney fees is reasonable and grant the motion.

**Reversed and remanded; motion granted.**