**UNITED STATES of America**

v.

**Charles DEVORCE, Russell Lombardo and Sally Poisson.**

**Crim. No. H–81–49.**

United States District Court, D. Connecticut.

Nov. 13, 1981.

---

Nancy Lukingbeal, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

M. Hatcher Norris, Glastonbury, Conn., for Lombardo.

Thomas Dennis, Fed. Public Defender, Hartford, Conn., for Poisson.

## RULING ON MOTION TO SUPPRESS

BLUMENFELD, Senior District Judge.

In a three-count indictment the government charges Russell Lombardo and Charles Devorce with the armed bank robbery of the Berlin Branch of the New Britain Bank and Trust Company. In the third count of the indictment, defendant Sally Poisson is charged with receiving and possessing money known to have been stolen from the same bank. Defendants Lombardo and Poisson assert that the attachment of an automobile tracking device onto a car they had rented, by agents of the Federal Bureau of Investigation (FBI), was constitutionally impermissible mandating suppression of the evidence discovered. They move to suppress the evidence taken from the car, pursuant to Fed.R.Crim.P. 12(b)(3) and 41(f). For the reasons set out below, the motion to suppress is denied.

### Facts

March 1979 marked the beginning of a series of bank robberies in Connecticut in which a similar *modus operandi* was used. The robbers were described by witnesses as a short white man and a tall black man, wearing ski masks. The *modus operandi* included using a stolen car which had the ignition broken in a peculiar way, which was abandoned soon after the robbery was completed. From information derived from prior arrests,[1] and the suspicious behavior of the two male defendants who were seen in the area of a bank just before its being robbed,[2] the FBI became interested in the

---

1. From prior arrests the descriptions of the defendants were known to the police. Russell Lombardo is a white male approximately 5'6", and Charles Devorce is a black male approximately 6' tall.

2. The affidavit of Agent Millen states in paragraphs four and five that

   4. One hour prior to the above robbery, two individuals saw a white male and a black male driving in a suspicious manner, in a green Mercury Cougar. They spoke with the driver, whom they identified from photographs shown to them by FBI Special Agent James Millen, as Lombardo, and took the tag number of the Cougar. This automobile was later determined to have been stolen.

   5. Following the above robbery, the Cougar was recovered abandoned a short distance from the bank. A witness to the robbery,

activities of the defendants, Lombardo and Devorce. The FBI obtained information indicating that the defendants were using rented cars as back-up cars,[3] which they used to leave the area of the crime after abandoning the stolen car used in the commission of the crime. The FBI was able to make a fairly positive identification of Russell Lombardo through his probation officer, Mr. Louis Roy, who identified Lombardo from photographs taken during one of the bank robberies.[4] In addition, a "source" provided information identifying the defendants as the persons responsible for numerous recent area bank robberies.[5]

On May 26, 1981, Lucia Moranski, the mother of defendant Lombardo, telephoned Thrifty Rent-A-Car requesting the rental of an automobile.[6] The FBI was informed of this, and based on this and the other information, applied to United States Magistrate F. Owen Eagan for an order authorizing the installation of an automobile tracking device. The Magistrate concluded that the affidavit provided probable cause to believe that a rental car would be used in the commission of a crime, and therefore authorized the installation of the tracking device in a car at the rental agency from which the defendants (or a member of their families) had rented cars on two prior occasions. With this authorization and the consent of the owner of the rental agency, the FBI installed the tracking device (beeper) on a car at the Thrifty Rent-A-Car in Windsor Locks, Connecticut.

The installation of the beeper occurred on May 27, 1981, and surveillance of the car began the same day, after it was rented by the defendants.[7] On May 28, 1981, a bank robbery occurred in Berlin, Connecticut. The description of the robbers and the *modus operandi* were the same as in the previous robberies. A witness, Ms. Alice Bruce, told police that she observed a car fitting the description of the rented car in a park-

---

stated, upon being shown photographs of the getaway car, that it differed in no way from the Cougar in which Lombardo was observed, although he cannot be certain that it was the identical car. The ignition lock of the Cougar had been broken in a peculiar fashion by use of a screwdriver.

3. The affidavit does not indicate how the FBI came by the information that the defendants were renting cars from the Thrifty Rent-A-Car at Bradley Airport.

4. Affidavit, ¶ 13.

5. Affidavit, ¶¶ 16, 19. The source also identified a sawed-off shotgun from photographs of two bank robberies as that which he saw in the possession of a man called "Gooster." Because the affidavit nowhere states that Gooster is the nickname of or otherwise refers to either of the defendants, this particular information is irrelevant. Similarly, the statement by the source that Devorce and Gooster were sprayed with red paint from a dye pack which exploded after a bank robbery at Terry Square (Affidavit, ¶ 19) is not considered, because this information is not tied into the activities of the defendants. Presumably, it is included to provide the necessary detail to satisfy the requirement of credibility and reliability. *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). Because I do not rely on the sufficiency of the affidavit for the holding in this case, it is unnecessary to consider whether detailed allegations from an unnamed source in an affidavit meet the *Spinelli* standard of credibility and reliability where they are either inaccurate or completely unsupported within the affidavit. In this case, the source stated that Devorce and Gooster were wearing white sneakers during several of the robberies. At another place in the affidavit, Mr. Louis Roy, Lombardo's probation officer, identifies Lombardo in part on the basis of unusual shoes that appear in the photographs. I do not understand unusual shoes to mean white sneakers. There is thus nothing in the affidavit which indicates that this source is reliable, except for the fact that it contains detailed information. It is an open question whether the mere recitation of detailed yet unsupported claims by an informant meets the requirement of reliability set up in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*.

6. Affidavit, ¶ 20.

7. The testimony at the suppression hearing leaves some doubt as to who actually picked up the rental car. On page nine of the transcript, Agent Farley testified that the car was rented by them, referring to the defendants themselves. Later, on pages 29–30, there is reference to Sally Poisson as the person who rented the car on May 27, 1981. For our purposes, it is enough that either the defendants or some member of their families picked up the rented car with the beeper attached to it.

ing lot of a Farm Shop [8] near the bank. She observed a yellow car drive into the parking lot at high speed and saw two people (whose faces she could not see because they were crouched down) enter the red (rented) car, which was driven by a woman she described as "white, dark hair, white blouse and a pixie-like face." [9]

When the FBI received this information, they undertook to locate the rented car through the beeper which had been attached to it the previous day. The beeper signal was located in the Berlin area soon after the robbery. An agent then spotted the car heading north on Interstate 91, and made visual contact, observing the driver of the car as fitting the description of the woman observed by Ms. Alice Bruce and also identifying Russell Lombardo. Thereafter, visual contact was lost, and the FBI was able to follow the rented car only through the signal given off by the electronic tracking device. Through air and ground surveillance, the FBI was able to trace the car's movements north into the Hartford area, and subsequently, it was spotted visually in the Founders Plaza parking lot in East Hartford. Shortly thereafter, a team of FBI agents stopped the rented car with the defendants in it and placed them all under arrest.

At the time of the arrest, a brown paper bag containing two guns and some money was taken from the front of the car. Also taken was money which was lying in between the seats in the car. Defendants Lombardo and Poisson move to suppress this evidence, claiming that their apprehension and arrest was due to the illegal use of a beeper in violation of fourth amendment rights.

### Discussion

■ Defendants argue that the installation and monitoring of a beeper is a "search" within the meaning of the fourth amendment, and therefore a warrant for such installation is required. The defendants rely on *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975) (*en banc*), *aff'd on rehearing by an equally divided court*, 537 F.2d 227 (1976), which held that the warrantless use of a beeper was an illegal search. Defendants assert that this court should follow *Holmes* and hold that the use of a beeper is a search, and thus there must be probable cause to support the application to the Magistrate for an order authorizing the installation of the beeper. The defendants proceed to argue that the affidavit in the instant case did not meet the standards for a finding of probable cause under the principles of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). They conclude by arguing that the evidence obtained as a result of the electronic surveillance must be suppressed as the product of an illegal search, since the Magistrate's order authorizing the installation of the beeper was not based on a valid finding of probable cause.

The defendants' argument raises an issue of first impression in this circuit: whether the installation of a beeper is a search thereby requiring a finding of probable cause for the valid authorization of the use of the beeper.[10] Defendants' claim that the affidavit is insufficient to establish probable cause only comes into consideration if the use of a beeper is a search. Because this circuit has not decided this point, and the other circuits are split, it is necessary to address the problem at some length. I note at the outset, however, that the *Holmes* case, on which the defendants rely quite heavily, was overruled by the Fifth Circuit

---

8. There is some confusion as to what the name of the place was where Sally Poisson allegedly waited for the other defendants. It is not necessary for the purpose of this motion to establish with certainty the name of the fast-food establishment.

9. Transcript page 43.

10. *See United States v. Vasquez*, 638 F.2d 507, 520 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) and *United States v. Place*, 660 F.2d 44 (2d Cir. 1981) for Second Circuit cases considering the issue of when something less than probable cause will justify a search or seizure.

sitting *en banc* in *United States v. Michael*, 645 F.2d 252 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 489, 70 L.Ed.2d 257, 30 Crim.L.Rep. 4041 (1981). In *Michael*, the court held that a "reasonable suspicion" was adequate to support a warrantless search of this sort, assuming, without deciding, that the installation of the beeper would be a search within the meaning of the fourth amendment.

The starting point in my analysis is *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) where government agents had attached an electronic listening device to the outside of the telephone booth and subsequently introduced information obtained thereby into the trial against the defendant. There the Court held that the protection afforded by the fourth amendment is determined by reference to the individual's reasonable expectation of privacy. Since *Katz*, the test has been described as a two-part analysis, involving both a consideration of the individual's expectation of privacy and an inquiry into whether the expectation was one which society was prepared to recognize (drawing on Mr. Justice Harlan's concurring opinion in *Katz*, 389 U.S. at 361, 88 S.Ct. at 516). In employing the *Katz* analysis, courts must consider (1) whether a reasonable expectation of privacy exists; (2) the nature of the intrusion; and (3) the government interest involved to determine whether there has been a fourth amendment violation.

In a recent case, *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Court used the *Katz* analysis to consider whether the warrantless installation of a pen register (a device which automatically records telephone numbers dialed) at police request in the telephone company's offices, was a search within the fourth amendment. The Court did not believe that people actually have an expectation of privacy with regard to telephone numbers they dial, *id.* at 742, 99 S.Ct. at 2581, and further, did not consider such an expectation, if it existed, as one which society was prepared to recognize. *Id.* at 743, 99 S.Ct. at 2582. It distinguished the facts in *Katz* on the basis that in *Smith* the pen register did not acquire the contents of communication, whereas the telephone tap in *Katz* did just that. *Id.* at 741, 99 S.Ct. at 2580. The Court believed that *Smith* was similar to *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Court held that an individual had no legitimate expectation of privacy in information voluntarily turned over to a third party. *Id.* at 442–44, 96 S.Ct. at 1623–24. In *Miller*, the information was bank records which were obtained without a warrant from the bank by means of a subpoena *duces tecum*. The Court in *Smith* said that the telephone numbers one dials are turned over to the phone company at the risk that the phone company will then turn them over to another party. In both cases, the Court relied on language in *Katz* that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511; *Miller*, 425 U.S. at 442, 96 S.Ct. at 1623.

In *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) the Court held that the warrantless examination of the exterior of an automobile was not a fourth amendment violation where it was based on probable cause. *Id.* at 592, 94 S.Ct. at 2470. In discussing the privacy interest and the level of intrusiveness, the Court stated:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*Id.* at 590, 94 S.Ct. at 2469 (citation omitted). The Court indicated that in general there is a diminished expectation of privacy surrounding an automobile. *Cardwell*, 417 U.S. at 589–91, 94 S.Ct. at 2468–69. *See also United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

The Ninth Circuit was the first to consider the fourth amendment problems arising from the installation of a beeper, and it has dealt with the problem in several cases. Beginning with *United States v. Hufford*, 539 F.2d 32 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976), the court employed a two-stage analysis, considering the installation and the monitoring of the beeper as two separate and potential fourth amendment violations. In *Hufford*, a beeper had been attached to a drum of chemicals with the owner's consent, and therefore there was no violation in the *installation* of the beeper. *Id.* at 34. With regard to the *monitoring* of the beeper signal the court stated:

> We see no distinction between visual surveillance and the use of an electronic beeper to aid the agents in following the movements of an automobile along public roads provided no Fourth Amendment violation occurred when the beeper was attached.

*Id.*

The same year, in *United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976), the Ninth Circuit was presented with a case very similar to the instant case. There, the government had obtained an order authorizing the installation of a beeper in an airplane suspected of being used in drug smuggling. The court, citing *Hufford*, stated:

> Under the law of this circuit, however, attachment of an electronic location device to a vehicle moving about on public thoroughfares (or through public airspace) does not infringe upon any reasonable expectation of privacy and therefore does not constitute a search. . . .

Consequently, no warrant is needed to justify installation of an electronic beeper unless fourth amendment rights necessarily would have to be violated in order to initially install the device.

*Id.* at 520 (citations omitted).[11]

The other circuits that have considered the problem have generally adopted the two-stage analysis of *Hufford*, although they have reached different results.[12] In *United States v. Bruneau*, 594 F.2d 1190 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979), the Eighth Circuit held "that monitoring the airborne location of an aircraft with a transponder is not a search within the fourth amendment." *Id.* at 1197. The court held that no violation occurred in installing the beeper, because it was installed with the owner's consent while the airplane was still in his possession. *Id.* at 1194.

The Sixth Circuit also has adopted the two-tier analysis, but it differs with both the Ninth and Eighth Circuits on whether monitoring the beeper may be a fourth amendment violation. In *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980), the court held that where the beeper disclosed the location of a drum of chemicals stored in the defendant's home, the monitoring "violated protected privacy rights and, therefore, had to meet fourth amendment requirements." *Id.* at 943. The court believed that monitoring alone could be a search within the meaning of the fourth amendment, where it involved the location of property within the home and hidden from public view. It concluded that these facts indicated that the defendants did have an expectation of privacy, and such an expectation was one which society was pre-

---

11. *Pretzinger* was followed in 1978 by *United States v. Dubrofsky*, 581 F.2d 208 (9th Cir. 1978), where a beeper was placed in a box of heroin. The analysis employed there was that society does not recognize an expectation of privacy in property that it is illegal to possess. The Seventh Circuit decided a case involving a beeper on the same grounds. The court there did not reach the issue of whether probable cause was needed. *See United States v. Washington*, 586 F.2d 1147 (7th Cir. 1978). See *United States v. Bailey*, 628 F.2d 938, 942 (6th Cir. 1980) for a discussion of other cases falling into this category.

12. For a more thorough review of the cases in the circuit courts, see *United States v. Michael*, 622 F.2d 744, 747–48 (5th Cir. 1980); *United States v. Bailey*, 628 F.2d at 942 43; and *United States v. Bruneau*, 594 F.2d 1190, 1194–96 (8th Cir. 1979). There have been several law review articles on this subject. They are noted in *United States v. Michael*, 622 F.2d at 748.

pared to recognize. *Id.* at 943–44. *Cf. United States v. Taborda*, 635 F.2d 131 (2d Cir. 1980) discussed at p. 19 *infra.* Because the warrant obtained in *Bailey* lacked a time limit, the court held that it did not meet the requirements for a valid search. *Id.* at 945.[13]

In *United States v. Moore*, 562 F.2d 106 (1st Cir. 1977), *cert. denied sub nom. Bobisink v. United States*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978), the First Circuit employed the *Hufford* analysis and concluded that the "trespass involved in affixing the beepers to the underbody of the vehicles was, standing alone, so minimal as to be of little consequence." *Id.* at 111. The court, however, did not agree with the Ninth Circuit on the status of monitoring the beeper once it had been lawfully attached. The *Moore* court stated that "while the intrusion involved in surveillance of a vehicle by beeper is considerably lessened by the fact that one driving on public roads knows that he is subject to public scrutiny, still the intrusion cannot be written off as non-existent." *Id.* at 112. Accordingly, the court held that "while the lessened expectation of privacy associated with motor vehicles justifies the use of beepers without a warrant to track vehicles, this can be done only if the officers have probable cause at the time." *Id.* at 112–13.

The Tenth Circuit in *United States v. Clayborne*, 584 F.2d 346 (10th Cir. 1978) took a position somewhere between that of the Ninth and the First Circuits. It cited its own decision in *United States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979), for the proposition that the warrantless installation of a beeper was justified where there was probable cause or exigent circumstances. *Clayborne*, 584 F.2d at 350. The court then commented that the "[c]ircumstances relating to probable cause were substantially the same background circumstances [in *Shovea*] which are here." *Id.* It thus appears that the narrowest holding is that a warrant is not required where there is probable cause, similar to that in *Moore*.[14] The court, however, also stated that "[w]e consider the electronic beeper as a substitute for persistent extensive visual effort," *id.* at 351, similar to the Ninth Circuit in *Hufford.* The actual language of the holding did not specifically rest on the existence of probable cause. The court concluded that because the laboratory in question was "susceptible not only to outside viewing, but also to ingress and egress of the public," *id.* at 350 (footnote omitted), the "slight intrusion was not per se in violation of the Fourth Amendment and . . . the use of the beeper without a warrant was not invalid." *Id.* at 351.[15] While the court did not say that a laboratory open to the public is in the same position as an automobile, the import of the court's reasoning is that what one exposes to public view does not merit fourth amendment protection.

**13.** In *United States v. Michael*, 645 F.2d 252, 257 n.13, the court interpreted *Bailey* as "requir[ing] nothing less than a warrant, at least for the attachment and monitoring of beepers on goods." But the court pointed out that the Sixth Circuit left undecided the question of whether the same would be true where there was a substantially reduced expectation of privacy, as in the case of the public travels of a vehicle. While the court in *Bailey* does not explicitly adopt the position of other courts that there is no reasonable expectation of privacy with respect to the movements of a vehicle through public roads, *see* 628 F.2d at 942, such a holding is by no means foreclosed by the decision in *Bailey* itself. There, the surveillance was of property located within the home. It is not difficult to distinguish the expectation of privacy which attaches to activities inside the home with that which surrounds the movements of an automobile on public streets. It remains to be seen, therefore, what the Sixth Circuit will do when presented with the issue in the context of automobile surveillance.

**14.** This is how *Clayborne* has been interpreted by the Eighth Circuit. *See United States v. Bruneau*, 594 F.2d at 1195.

**15.** The Sixth and Fifth Circuits, on the other hand, do not understand *Clayborne* as resting on the existence of probable cause. They both emphasize that the holding in *Clayborne* was premised on the finding that there is no legitimate expectation of privacy in the location of a clandestine laboratory located in a commercial building open to the public. *See United States v. Bailey*, 628 F.2d at 943; *United States v. Michael*, 622 F.2d at 748.

This same analysis would apply to the movements of a car through public roads.[16]

The Fifth Circuit in *United States v. Michael*, 645 F.2d 252, took a position close to that of the Ninth and Eighth Circuits. The court's analysis is difficult to characterize, however, since it did not explicitly adopt the two-step analysis of *Hufford*.[17] Instead the court collapsed the consideration of the installation and monitoring issues into one step. The decision rests on the implicit premise that where the installation is justified, the monitoring is not a problem, since, in the case of an automobile, monitoring will always involve lower expectations of privacy than installation. Thus the court's analysis focuses primarily on the installation issue, and only incidentally discusses monitoring.

In *Michael* the beeper was attached to the defendant's van while it was parked in a public parking lot. The court's analysis starts with the assumption that installing the beeper was a search. *Id.* at 256.[18] While a technical trespass may have been involved, the court did not view that as significant.[19] Instead, the court viewed the expectation of privacy analysis as the touchstone of the fourth amendment's protections.[20]

The court recognized that the defendant's "expectation of privacy with respect to the movements of his automobile was substantially reduced." *Michael*, 645 F.2d at 258 (footnote omitted). The court then considered the nature of the intrusion involved in installing the beeper. It stated that

[t]he actual installation of the beeper was much less intrusive than the typical stop and frisk.... [Michael] was not detained or questioned; he suffered no indignity; [citing *Terry v. Ohio*, 392 U.S. 1, 17–18 [88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889] (1968)] nothing from the interior of the van was seized or searched; indeed nothing even from the van's exterior was removed. See *Cardwell v. Lewis*, 417 U.S. [583] at 591 [94 S.Ct. 2464 at 2469, 41 L.Ed.2d 325].

*Id.* at 258.

Applying this dual privacy and intrusiveness analysis, the court concluded that this particular search (the installation) could be justified by something less than probable cause. Because the expectation of privacy was substantially reduced when the defendant's vehicle was parked in a public place and because the intrusion in installing the beeper was so minimal, the court held that "reasonable suspicion is adequate to support warrantless beeper installation." *Michael*, 645 F.2d at 257 (footnote omitted).[21]

---

**16.** The Tenth Circuit was faced with the same issue in *United States v. Chavez*, 603 F.2d 143 (10th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). There an order authorizing installation of a beeper on an airplane had been obtained. The court assumed, without deciding, that the installation of the beeper constituted a search. *Id.* at 145. It upheld the installation, however, concluding that the affidavit provided a basis for a finding of probable cause. This case does not help to clarify the Tenth Circuit's position in *Clayborne*.

**17.** See *United States v. Michael*, 645 F.2d at 257 n.13, where the court implies that it is not following the analysis of the Ninth Circuit.

**18.** "We note that some members of the majority would hold that the installation of the beeper on the van is not a search at all, and thus does not implicate any fourth amendment interests. While we do not reject this view, we feel that under the facts presented, the installation of the beeper was permissible even if we assume

the installation was a search." *Michael*, 645 F.2d at 256.

**19.** See *Michael*, 645 F.2d at 255, 256–57 n. 11, and 258 n.14.

**20.** See *Michael*, 645 F.2d at 258 n.14. The court states that while "we do not necessarily adopt the reasoning in *Smith* [*v. Maryland*] so completely as to find that the attachment and use of the beeper was free from fourth amendment concerns, we recognize that under *Smith*, Michael's expectation of privacy was slight."

**21.** The reasonable suspicion standard was apparently drawn from language in *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); see *Michael*, 645 F.2d at 256 n.8. For other cases discussing or utilizing a reasonable suspicion standard see *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct.

The court placed beeper installation under these circumstances in a category with cases which implicate fourth amendment concerns to a very limited degree. This category of cases is distinguished by the existence of a substantially reduced expectation of privacy and a very minimal intrusion.[22] Because the search in this case was so minimal, the court concluded that it did not require the full panoply of fourth amendment protections, including a warrant or probable cause.

*Michael* did not address the monitoring of the beeper as an independent fourth amendment problem. There is language which implies that the court was in agreement with the Ninth Circuit that monitoring alone does not implicate the fourth amendment at all.

> The subsequent monitoring also did not violate Michael's reasonable expectation of privacy. The beeper only aided the agents in the performance of their lawful surveillance.

*Id.* at 258. But the court continued, saying

> Monitoring the beeper while the agents had reasonable suspicion to believe Michael was conspiring to manufacture MDA did not violate his fourth amendment rights.

*Id.*

From this language it is difficult to state with certainty whether *Michael* stands for the proposition that there must be a reasonable suspicion for monitoring alone. My reading of the decision, however, persuades me that the Fifth Circuit did not intend to require an independent showing of reasonable suspicion for monitoring. Rather, the court assumed that where installation was justified, monitoring would not present a fourth amendment problem. Because it concluded that installation was justified in *Michael*, it did not need to address the monitoring issue at length.

Although the *Michael* court did not go through the two-step *Hufford* analysis, this does not mean that it rejected the rationale of that analysis. The court recognized that installation under other circumstances might implicate different and more significant expectations of privacy than in *Michael*. The reasonable suspicion standard is not applicable to all installations of beepers on automobiles, but only those which take place in the public domain and involve a minimal intrusion. It was appropriate to short-cut the two-step analysis in *Michael* only because of the special factual circumstances of that case, where the installation and the monitoring involved virtually the same expectation of privacy.

In the instant case, my analysis follows that employed by the other circuits. First, I will consider whether the installation of the beeper violated any protected rights. Then I will examine the issue of the monitoring of the beeper. I begin with the assumption that installation of a beeper may constitute a fourth amendment violation, depending on where and how it is installed.

In the instant case, the FBI agents installed the beeper on a rental car with the consent of the owners. In a very similar case, the Ninth Circuit held that the owner of rental property could validly consent to the installation of the beeper.

> "The appellants have argued that [the aircraft's owner] had no authority to grant to the officers permission to install the transponder. They base this argument upon the fact that the agreement for the rental of the plane had been made prior to the transponder's installation. We reject the argument. The installation occurred before the time for the commencement of the rental period. The owner of the plane had full control and dominion over it at the time, and it seems logical to us that the owner, through its agent, had the right at that time to install within its airplane any instrument that would not be physically dangerous to occupants of the plane."

1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975).

**22.** See *Michael*, 645 F.2d at 256 nn.8–10 and accompanying text for discussion and examples of other cases.

*United States v. Miroyan,* 577 F.2d 489, 493 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978) (quoting from *United States v. Curtis,* 562 F.2d 1153, 1156 n.1 (9th Cir. 1977), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978)). *Accord, United States v. Abel,* 548 F.2d 591, 592 (5th Cir.), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977); *United States v. Cheshire,* 569 F.2d 887, 889 (5th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978).

The most recent case in this circuit to consider the issue of third party consent to a search took place in a factually different context. In *United States v. Buettner-Janusch,* 646 F.2d 759 (2d Cir. 1981), the court reviewed the requirements for a valid third party consent.

> To satisfy the burdens imposed on it by the third party consent principle, the Government must show, by a preponderance of the evidence, that the consent to search was freely and voluntarily given, *see Schneckloth v. Bustamonte,* 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854] (1973), and was obtained from someone "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171 [94 S.Ct. 988, 993, 39 L.Ed.2d 242] (1974).

*Id.* at 764. *See also United States v. Sanchez,* 635 F.2d 47 (2d Cir. 1980). As in *Buettner-Janusch,* in the instant case there is no question that the consent to search was freely and voluntarily given. The question then is whether the rental agency had the authority to consent to the "search." "The well established rule in this

Circuit is that '[c]onsent to a search by one with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied, alone validates the search.'" *Id.* at 765 (citations omitted).

Applying the well established rule to the facts of this case, I must conclude that the owner of the rental car had authority to authorize the installation of the beeper while the car was still in its possession. I am in agreement with the Fifth and Ninth Circuits that the mere fact that rental property is involved does not affect the rights of the parties while the property is still in sole possession of the owner. *See United States v. Cheshire,* 569 F.2d at 889; *United States v. Miroyan,* 577 F.2d at 493. Since there was valid third party consent, there was no constitutional violation in the installation of the beeper.[23]

■ The second step of the analysis requires consideration of whether monitoring of the beeper may itself constitute a fourth amendment violation. The Second Circuit has not decided a case involving surveillance with an automobile tracking device. Recently, however, in *United States v. Taborda,* 635 F.2d 131 (2d Cir. 1980), the court indicated that the threshold question in situations of artificially enhanced viewing is "whether observation by means of a high-powered telescope constitutes the type of intrusion against which the fourth amendment protects. The answer depends on whether such surveillance violated reasonable expectations of privacy." *Id.* at 136. In *Taborda,* the court held that viewing into the home violated reasonable expectations

---

**23.** Because there was valid third party consent, it is not necessary to decide whether reasonable suspicion would be otherwise sufficient to justify the installation of the beeper. Assuming that reasonable suspicion would be sufficient, it is clear that it existed in this case. The affidavit referred to a particular *modus operandi* which led the FBI to believe that a rented car would be used by these defendants in the commission of a crime. In a similar case, the Supreme Court recently stated that "the modes or patterns of operation of certain kinds of lawbreakers" may be considered in determining if reasonable suspicion exists. *United*

*States v. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. In *Cortez,* the agents had stopped the vehicle because its movements were consistent with the *modus operandi* of "Chevron," an anonymous smuggler of illegal aliens. The Court upheld the stop of the vehicle on the ground that based upon the "whole picture," the agents could "reasonably surmise" that the vehicle was engaged in criminal activity. *Id.* at 421, 101 S.Ct. at 697. In the instant case, the affidavit contained facts which created a reasonable suspicion that the rental car would be used in the commission of a crime.

of privacy where such viewing could be accomplished only through enhanced means. This was because the "very fact that a person is in his own home raises a reasonable inference that he intends to have privacy." *Id.* at 138. The court recognized that even activities conducted within the home may not be protected if the person conducts them in such a way that they are visible to the unenhanced viewing of the public. *Id.* The crucial fact in *Taborda*, then, was not the use of vision enhancing devices per se, but the use of such devices in the context of observing activities within the home. Nothing in *Taborda* indicates that this circuit requires a warrant in all instances where vision enhancing devices are utilized. On the contrary, *Taborda* requires a case-by-case determination of the nature of the intrusion and the expectation of the privacy interest involved.

In the instant case, I am in agreement with all the other circuits that a person has a very reduced expectation of privacy in regard to the movements of his automobile through public roads.[24] The intrusion involved in monitoring the beeper is minimal, if not nonexistent. As the Supreme Court stated in *Katz*, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." 389 U.S. at 351, 88 S.Ct. at 511. Since the defendants in the instant case drove on public roads, they could not have had an expectation of privacy in the movements of their car. I agree with the Ninth Circuit in *Hufford* that there is "no distinction between visual surveillance and the use of an electronic beeper to aid the agents in following the movements of an automobile along public roads . . . ." 539 F.2d at 34. Because the agents could lawfully have observed the movements of defendants' car without the electronic beeper enhancing their vision, the mere use of an electronic device does not automatically activate the fourth amendment requirement of a warrant.[25] The defendants had no reasonable expectation of privacy which was violated by the electronic surveillance employed in this case. It follows that the monitoring of the movements of the defendants' car through the public roads did not constitute a fourth amendment violation.

## Summary

In the instant case, probable cause was not required because there was valid third party consent to the installation of the beeper. Accordingly, the defendants' argument that the affidavit was insufficient is without merit. There was no constitutional violation in the installation of the beeper. The monitoring by itself does not even amount to a search within the meaning of the fourth amendment, and therefore could not amount to a constitutional violation.

In conclusion, I hold that probable cause was not required for the installation of the beeper where valid third party consent had been obtained. Accordingly, the defendants' motion to suppress is denied.[26]

SO ORDERED.

---

24. Few courts have considered the problems with monitoring once a vehicle leaves the public view, either by entering private roads or entering a private building. As this problem is not before me, I intimate no views as to the appropriate standards.

25. There is little real concern that the government will abuse its discretion by installing and monitoring vehicles at random. At present, the beeper must be followed by air and ground surveillance, at considerable government expense and effort. It is thus only a small step beyond lawful visual surveillance. While technological advances are predictable, it is not necessary to deal with them at this time. When it becomes possible to track the movements of vehicles without significant expense and effort, then the built-in restraint on the government will no longer be effective. At that time the courts will have to fashion an appropriate standard to protect individual rights from unreasonable intrusion.

26. The Fifth Circuit's analysis follows the test enunciated in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The Court stated "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's fourth amendment interests against its promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396 (footnote omitted).

I have not considered the governmental interest involved in my analysis of the installation of

* the beeper, because I am not holding that something less than probable cause is sufficient to justify the installation. The balancing test quoted above is only necessary where the search is upheld in reliance on a standard less exacting than probable cause. See *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) and cases cited in note 20 *supra*.