We granted certiorari to review a decision of the Court of Criminal Appeals, 361 So.2d 22 which held that a motion to suppress the contraband seized should have been granted. It reversed and remanded. We reverse and remand its decision.
Briefly, the facts are these. The Chief of the West Alabama Narcotics Squad, Lt. Russell, testified that around 11:30 a.m.
on a Sunday, he received a telephone call at his home from an informer with a record of reliability that defendant stated to him that he was coming to the informant's house on Sunday to watch a basketball game on television and that he would arrive there, as Lt. Russell first testified, "between noon and 3:00p.m." and "by 3:00 p.m.," as he subsequently testified. The informant told Russell that defendant would be bringing cocaine with him, that he would be coming to Tuscaloosa from Eutaw, what type automobile he would be driving and what was the vehicle tag number. After receiving the informant's call, Lt. Russell placed calls to various officers of his narcotics squad and ordered them to assemble by 12:30 that day. Whereupon, the officers proceeded in four cars to an exit on I-59 arriving there about 1:00 p.m. Around 4:15 p.m. defendant was spotted coming onto the interstate highway in the car described by, and with the tag number given by, the informant. Defendant was stopped, arrested, searched, and found in possession of cocaine. Lt. Russell testified it would have been "possible," with "a minimum of effort" to have obtained a warrant on that Sunday.
Although the issue of probable cause is not before us for our review, the Court of Criminal Appeals found probable cause and we agree they are correct in that finding. Nevertheless, the Court of Criminal Appeals reversed the conviction because it said no "exigent circumstances" existed to justify the search and seizure. The Court of Criminal Appeals defined "exigent circumstances" as a "now or never" situation where police must act promptly to preserve evidence of a crime.
The question then is, were there "exigent circumstances" here to justify the warrantless search and subsequent seizure? Although this is a close case, we must say that we believe the answer to the question is "yes."
The "exigent circumstances" here were the inherent mobility of the automobile, which often makes obtaining a judicial warrant impracticable if not impossible. Why is an automobile different?
 "The answer lies in the diminished expectation of privacy which surrounds the automobile: *Page 30 
 "`One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.' Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion).
 "Other factors reduce automobile privacy. `All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways.' Cady v. Dombrowski, [413 U.S. 433] at 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. Automobiles periodically undergo official inspection, and they are often taken into police custody in the interests of public safety. South Dakota v. Opperman, [428 U.S. 364] at 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000."
United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476,53 L.Ed.2d 538 (1977).
Although an informant's tip may be sufficient to substantiate "probable cause" it does not always mean that the officer can rely factually on the informant's statement as to the exact time of arrival of the defendant. It seems to us that it was entirely reasonable here for the officers to place their stakeout as soon as possible for they could never be sure that the informant's information as to the exact time of arrival would prove accurate or, on the other hand, that the defendant might not change his mind and come earlier than anticipated. In short, Lt. Russell really didn't "know" when the defendant would appear. He testified, at first, it would be "between noonand 3:00 p.m." and, later, "by 3:00 p.m." As it turned out, the defendant was later by an hour than the latest expected time of arrival. Of course, he might have arrived just after noon. No one knew beforehand.
In U.S. v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430,94 L.Ed. 653 (1950), the United States Supreme Court held, "The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."
To conclude, we think, under the circumstances of this case, there were "exigent circumstances" justifying the warrantless search and seizure.
We close with this caveat to all law enforcement personnel:
 ". . . The judicial warrant has a significant role to play in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer `engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, [68 S.Ct. 367, 92 L.Ed. 436] (1948). Once a lawful search has begun, it is also far more likely that it will not exceed proper bonds when it is done pursuant to a judicial authorization `particularly describing the place to be searched and the persons or things to be seized.' Further, a warrant assures the individual whose party is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. Camara v. Municipal Court, 387 U.S. 523, 532, [87 S.Ct. 1727, 18 L.Ed.2d 930] (1967).
 "Just as the Fourth Amendment `protects people, not places,' the protections a judicial warrant offers against erroneous governmental intrusions are effective whether applied in or out of the home. . . ."
United States v. Chadwick, supra.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES and BEATTY, JJ., concur.
EMBRY, J., dissents. *Page 31