MADDOX, Justice
(dissenting).
This is a drug possession case. The issue is whether an informant’s tip created probable cause for the police to conduct a warrant-less search of the defendant’s van. The trial court granted the defendant’s motion to suppress the evidence. The State appealed, as it was allowed to do, arguing that the informant had provided credible tips on several occasions. The Court of Criminal Appeals affirmed, stating in an unpublished memorandum that the informant’s credibility was not sufficiently established so as to make the warrantless search of Morris’s van “reasonable.” After that Court denied the State’s application for a rehearing, the State filed in this Court, pursuant to the provisions of Rule 39(k), Ala.R.App.P., a statement of the pertinent facts and asked this Court to review the holding of the Court of Criminal Appeals.
The State’s statement of facts included the following, which appear to be substantiated by the record: On January 13, 1993, a confidential police informant met with Montgomery police officers H.C. Forte, B.J. McCullough, and L.D. Perkins, at the corner of Day and Davidson Streets in Montgomery, at approximately 3:00 p.m.. The confidential informant told the officers that he had arranged for Morris to sell one ounce of powder cocaine to him at the corner of Day and Greyhound Streets at 3:30 p.m.; that Morris would be driving a tan and blue van; that the van and Morris would be located at the corner of Day and Greyhound Streets; that Morris would be armed; and that illegal drugs would be inside the van. The informant based some of this information on past drug transactions with Morris.
*749 At the suppression hearing, Officer H.C. Forte testified that he had received reliable information from the informant on least seven occasions since July 1992. Officer Forte, as part of an ongoing investigation involving the Montgomery Police Department and the Federal Drug Task Force, had met Morris many times in high drug areas and had seen Morris in a van that matched the informant’s description of the van he said Morris would be using.
Officer Forte, testifying concerning the credibility of the informant, stated that on one prior occasion he (Forte) had observed Morris selling a kilogram of cocaine. Officer Forte made this observation relying on information provided by the same confidential informant. Morris was not arrested at that time, in order to protect the identity of the informant and because Officer Forte was without back-up. However based on Officer Forte’s observation, the police obtained a search warrant for the place where Morris worked and the search led to a successful prosecution of Morris’s employer.
On the occasion at issue and based on the information provided by the informant, the officers arrived at the corner of Day and Greyhound Streets at approximately 3:30 p.m.; for approximately 5 to 10 minutes they watched Morris, who was standing on the corner near the van. At approximately 3:40 p.m., Officer Forte and two other officers confronted Morris. The officers conducted a pat-down search of Morris for weapons. The officers asked Morris if he had a key to the van and he told them that he did not; nevertheless, he gave Officer Forte a set of keys, one of which did fit the van’s door lock. Without a warrant, the officers unlocked the van and found weapons, nearly $4,000 in cash, and an undetermined amount of powder cocaine. Officer Forte testified that because of time restraints they were not able to obtain a search warrant beforehand.
The defendant filed a motion to suppress the evidence seized as a result of the search of the van, arguing that the officers had unlawfully seized his person and property without probable cause. The trial court granted Morris’s pre-trial motion to suppress the evidence seized in the van search. The Court of Criminal Appeals affirmed, without opinion, and this Court issued a writ of cer-tiorari. The majority of the Court has now voted to quash the writ as having been improvidently granted and thereby to uphold the Court of Criminal Appeals’ decision.
Based on my review of the record and the applicable law, I believe that the officers had probable cause to conduct the search and make the seizure; therefore, I must respectfully dissent.
At issue in this case is whether the officers’ search of the van and the subsequent seizure of the evidence violated Morris’s rights under the Fourth Amendment. Without question, the law relating to searches and seizures was substantially modified and changed by the United States Supreme Court in the landmark case of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Many of the facts in this case are similar to facts presented in Illinois v. Gates. In that case, the Court abandoned the “two-pronged test” for determining probable cause under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and adopted in its place a “totality-of-the-circumstances” approach to determining probable cause. In setting forth the totality-of-the-circumstances approach, the Court stated:
“This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific ‘tests’ be satisfied by every informant’s tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a ‘practical, nontechnical conception.’ Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). ‘In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ Id., at 175, 69 S.Ct., at 1310. Our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding ‘particular *750 ized suspicion,’ is also applicable to the probable-cause standard:
“ ‘The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfin-ders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’
“As these comments illustrate, probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.... ”
[[Image here]]
“As early as Locke v. United States, 7 Cranch. 339, 348, 3 L.Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context, ‘[T]he term “probable cause,” according to its usual acceptation, means less than evidence which would justify condemnation_ It imports a seizure made under circumstances which warrant suspicion.’ More recently, we said that ‘the quanta ... of proof appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Brinegar, 338 U.S., at 173, 69 S.Ct., at 1309. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate’s decision. While an effort to fix some general, numerically precise degree of certainty corresponding to ‘probable cause’ may not be helpful, it is clear that ‘only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.’ Spinelli, 393 U.S., at 419, 89 S.Ct., at 590. See Model Code of Pre-Arraignment Procedure § 210.1(7) (Prop.Off. Draft 1972); 1 W. LaFave, Search and Seizure, § 3.2(e) (1978).”
462 U.S. at 230-35, 103 S.Ct. at 2328-30 (footnotes omitted).
The United States Court discussed probable cause in conjunction with an informant’s tip, as follows:
“Informants’ tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): ‘Informants’ tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability.’ Rigid legal rules are ill-suited to an area of such diversity. ‘One simple rule will not cover every situation.’ Ibid.
“Moreover, the ‘two-pronged test’ directs analysis into two largely independent channels — the informant’s ‘veracity’ or ‘reliability’ and his ‘basis of knowledge.’ ... There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. See, e.g., Adams v. Williams, supra, at 146-147, 92 S.Ct., at 1923-1924; United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
“If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular- case, to thoroughly set forth the basis •of his knowledge surely should not serve as an absolute bar to a finding of probable eause based on his tip. See United States v. Sellers, 483 F.2d 37 (CA5 1973). Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary. Adams v. Williams, supra. Conversely, even if we entertain some doubt as to an informant’s motives, *751 his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality-of-the-eircumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant’s tip, the ‘two-pronged test’ has encouraged an excessively technical dissection of informants’ tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.”
462 U.S. at 232-35, 103 S.Ct. at 2329-30.
The law has long recognized a number of exceptions to the Fourth Amendment’s warrant requirement. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973); Callahan v. State, 644 So.2d 1329 (Ala.Cr.App.1994). In the case before us now, the exception at issue is the exception applicable when exigent circumstances exist coincidental with probable cause. See Chambers, supra; Daniels, supra; and Grotjan v. State, 500 So.2d 1258 (Ala.Cr.App.1986).
This Court has held that exigent circumstances exist whenever an object to be searched is mobile or moveable, such as an automobile. Rickman v. State, 361 So.2d 28 (Ala.1978); see also Grotjan, 500 So.2d at 1259; Chambers, 399 U.S. at 48-50, 90 S.Ct. at 1979-81. In Rickman, the Court stated:
“The question then is, were there ‘exigent circumstances’ here to justify the warrantless search and subsequent seizure? Although this is a close ease, we must say that we believe the answer to the question is ‘yes.’
“The ‘exigent circumstances’ here were the inherent mobility of the automobile, which often makes obtaining a judicial warrant impracticable if not impossible. Why is an automobile different?
“‘The answer lies in the diminished expectation of privacy which surrounds the automobile:
“ ‘One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it.seldom serves as one’s residence or as the repository of personal effects.... It travels public thoroughfares where both its occupants and its contents are in plain view.’ Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, [2469] 41 L.Ed.2d 325 (1974) (plurality opinion).
“ ‘Other factors reduce automobile privacy. “All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways.” Cady v. Dombrowski, [413 U.S. 433] at 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 [(1973)]. Automobiles periodically undergo official inspection, and they are often taken into police custody in the interests of public safety. South Dakota v. Opperman, [428 U.S. 364] at 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 [(1976)].’
“United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).”
361 So.2d at 29-30. See also United States v. Thomas, 536 F.Supp. 736 (M.D.Ala.1982); Sawyer v. State, 598 So.2d 1035 (Ala.Cr.App.1992), cert. denied, 506 U.S. 943, 113 S.Ct. 386, 121 L.Ed.2d 295 (1992); Smith v. State, 606 So.2d 174 (Ala.Cr.App.1992).
Based on the all of the information furnished and available to the officers concerning the alleged possession of illegal drugs, I am firmly convinced that the officers did not conduct an illegal search. The totality of the circumstances shows that the officers were dealing with a motor vehicle that they had reason to believe would be used in the commission of a criminal offense. A reliable informant had arranged the drug transaction for a specific time, at a specific place, and the officers were given only 30 minutes to act. In fact, the officers cited the lack of sufficient time as their reason for not seeking a warrant. The facts show that the officers had only a small window of opportunity in which to get to the location and search the vehicle; this fact constituted an exigent circumstance *752 justifying a warrantless search in conjunction with probable cause.
The other issue presented is whether the officers had probable cause to search the van. Clearly, they did. “ ‘The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.’ ” United States v. Maguire, 918 F.2d 254, 259 (1st Cir.1990) (quoting United States Supreme Court decisions), cert. denied, 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991).[1] Thus, the issue before the Court is not whether the defendant was validly arrested, but whether the officers had probable cause to search the van.[2]
Applying this totality-of-the-circumstances analysis of Illinois v. Gates to the facts of this case, I believe that the officers had probable cause to believe “that the contents of the automobile offend[ed] against the law,” Maguire, 918 F.2d at 259, and thus, probable cause to search Morris’s van. The officers were given information from a confidential informant who had provided reliable information to the officers in the past. The informant gave the officers detailed information, including the following: the defendant’s name, a description of the van, and a description of where the drugs would be located. Furthermore, the informant advised the officers that Morris would be armed, where Morris would be located, and what time he would be at that location. In fact, the confidential informant had just scheduled a drug buy with Morris for that time and that location.
In addition to the information provided by the informant, the officers were aware of Morris’s reputation as a drug dealer, and one officer, Officer Forte, had even witnessed Morris’s participation in a previous drug transaction. Officer Forte had previously seen Morris in the van that was subsequently searched, a van that matched the informant’s description. Based on these facts and circumstances, the search would have been reasonable even under the old Aguilar/Spinelli analysis that was discredited in Illinois v. Gates.
Applying the necessary “common-sense” approach to determining probable cause, as outlined in Illinois v. Gates, I think there is no question that the officers had probable cause to believe that “the contents of the automobile offend[ed] against the law,” Ma-guire, 918 F.2d at 259, and thus, that the warrantless search of the van was valid.
HOOPER, C.J., and BUTTS, J., concur.

. This test differs from the test used to determine whether probable cause exists to make a war-rantless arrest. For a warrantless arrest, the officer must have reasonably trustworthy information causing the officer to believe that a felony has been committed and that the person being arrested committed the felony. Brooks v. City of Dothan Police Dep't, 562 So.2d 162, 163 (Ala.1990). See also Rule 4.1(a)(1)(f), Ala.R.Crim.P.; Ex parte Beck, 485 So.2d 1207 (Ala.1985).

. I note that in determining "probable cause” a police officer’s subjective intent is immaterial. Brooks v. City of Dothan Police Dep’t, 562 So.2d at 163 (Ala.1990).