TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00267-CR






David Edwin Wiede, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NO. 96-0115, HONORABLE JACK ROBISON, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N




 Because the trial judge is the sole judge of the credibility of the witnesses and we are
to uphold the trial court's ruling on any theory of law applicable to the case, and because this
probation revocation hearing involves an application of law to facts, the outcome of which turns on
the credibility and demeanor of the witnesses, I would affirm the trial court's revocation order. See
State v. Ross, 32 S.W.3d 853 (2000). We accord the trial court its necessary and proper role because
it is the trial court that observes firsthand the demeanor and appearance of witnesses. But brushing
aside the standard of review here, the majority reviewed a cold record, resurrected soundbites of
testimony to support its own fact-finding, and engaged in a post hoc evaluation of governmental
conduct that the trial court had found was reasonable in its context. Because the majority failed to
adhere to the appropriate standard of review, I dissent. (1)

 At a hearing on the State's motion to revoke probation, the record reveals the
following facts. Ray Tambunga, a high school teacher with the Austin Independent School District,
was taking his son to school at approximately 7:00 a.m. on April 17, 2002. He stopped at the T-intersection of Siebert Drive and F.M. 150 in Hays County behind an 18-wheeler truck loaded with
sod. He waited while the truck turned left onto F.M. 150. As Tambunga turned right on F.M. 150,
he saw appellant's white sports car pass by a "little bit faster than the speed limit." Tambunga
watched as appellant collided with the truck that continued on down the roadway.

 Tambunga pulled off the highway and stopped to check on appellant's condition. 
Tambunga went over to the driver's side window of appellant's car and asked appellant if he was
all right. There, Tambunga observed that appellant was dazed and bleeding. Within a few minutes,
a department of public safety trooper stopped to help.

 DPS Trooper Christopher McGuairt testified that he came upon the accident shortly
after it occurred as he was traveling from Austin to San Marcos with another trooper to conduct a
DPS training exercise for new officers. McGuairt testified that he saw a vehicle in the road, facing
the opposite direction, with severe damage to the front portion of the car. The officers called in the
accident, located the 18-wheeler that was also involved in the accident, and began directing traffic. 
Appellant was badly injured with cuts and abrasions, and was bleeding on his face.

 As other law enforcement personnel arrived on the scene, Tambunga remained near
appellant's car. At one point, appellant's movements led Tambunga to believe he was going to light
a cigarette. Leaning forward to dissuade appellant from smoking, Tambunga saw appellant make
some movements, reaching across his body with his left hand "as if he was getting something out
of his pocket." Tambunga told the officers that he saw appellant "reach across his body and hide
something between the seat, the driver's seat and the console." Tambunga testified that the item
covered by appellant's hand appeared to be "clear plastic similar to a sandwich bag." The officer
retrieved an item from the area near the console. Tambunga testified:


[A]t first, he [the officer] produced a little--a small square about two by two plastic
wrapper that had been torn--ripped open and I saw and said, no. It was--I told him,
I said it appeared larger than that. It looked like it was bigger than that. So he went
back and he produced a sandwich size bag, you know, with something in the bottom,
some kind of off-white, whitish in the bag.



It "looked like powder."

 McGuairt also testified that Tambunga advised the officers that appellant had
"removed something from his pocket and reached back and placed it around the console area."
McGuairt testified that the circumstances of the accident and Tambunga's tip caused him to be
suspicious that appellant had hidden "some type of contraband." He observed another officer "reach
into the center console area and remove[] a substance" that was "off-white colored" and inside a
clear plastic bag. McGuairt took possession of the bag.

 Appellant had been removed from the car and placed in the ambulance. McGuairt
testified that he knocked on the back door of the emergency vehicle to advise the EMS personnel of
the existence of the bag of white powdery substance. When DPS Trooper Freeman, the investigating
officer, arrived on the scene, McGuairt turned the substance over to him. Because appellant's car
was disabled and blocking traffic, it was towed from the scene by a private wrecking service. 
Appellant was charged with having no liability insurance and with failure to control speed. At the
hearing on the State's motion, Freeman testified that the accident was caused by appellant "traveling
at an unsafe speed."

 In reviewing a ruling on a challenge to the admission of evidence, we give almost
total deference to the trial court's determination of historical facts and review the court's application
of law de novo. Ford v. State, No. PD-1946-03, 2005 Tex. Crim. App. LEXIS 399, at *8 (Tex.
Crim. App. March 9, 2005); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When
the trial court does not make explicit findings of historical facts, we review the evidence in a light
most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact
supported in the record. Id. We must affirm the trial court's ruling if it can be upheld on any valid
theory of law applicable to the case--even if the trial court did not base its decision on the applicable
theory. State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

 When a defendant appeals from a probation revocation hearing, the question
presented is whether the trial court abused its discretion in revoking the defendant's probation. 
Bradley v. State, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978). In determining whether an abuse
of discretion occurred, we review the evidence adduced at the revocation hearing in the light most
favorable to the trial court's order. Jones v. State, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). 
At a probation revocation hearing, the trial court is the sole trier of fact and determines the credibility
of the witnesses. Ex parte Tarver, 725 S.W.2d 195, 198 (Tex. Crim. App. 1986). The trial court
must find that the State satisfied its burden of showing that "the greater weight of the credible
evidence . . . creates a reasonable belief that a condition of probation" was violated, and has "proved
every element of the offense by a preponderance of the evidence." Kulhanek v. State, 587 S.W.2d
424, 426 (Tex. Crim. App. 1979).

 Once the defendant establishes that a police search was not supported by a warrant,
the burden shifts to the State to prove the reasonableness of the search and seizure and the
admissibility of the evidence. See Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). It
is undisputed in this case that appellant was not arrested and that the search was warrantless. To
uphold the court's determination in this case, the evidence on which the court based its determination
must have been properly admitted.

 The State contends that the evidence was properly admitted because the appellant had
no reasonable expectation of privacy in his automobile after he was involved in an accident that left
the vehicle disabled and blocking a lane of highway traffic. The State also contends that the
circumstances at the accident scene provided probable cause for the officers to search appellant's car.

 The Texas Transportation Code expressly provides that "[a] peace officer who is
notified of a motor vehicle accident resulting in injury . . . may investigate the accident and file
justifiable charges relating to the accident . . ." Tex. Transp. Code Ann. § 550.041(a) (West 1999
& Supp. 2004-05). Not only are officers authorized to investigate accidents, they have a duty to do
so, and conducting an investigation of the vehicles involved is a necessary part of fulfilling that duty. 
Sandel v. State, 253 S.W.2d 283, 285 (Tex. Crim. App. 1952). Here, the parties agree that the search
was conducted as part of an accident investigation rather than a traffic stop or inventory search. The
officers were authorized to investigate the accident scene pursuant to section 550.041(a) of the Texas
Transportation Code. The question remains whether they could lawfully retrieve the bag of
methamphetamine located near the console.

 Courts have long recognized that the physical characteristics and uses of an
automobile result in a lessened expectation of privacy. See, e.g., Wyoming v. Houghton, 526 U.S.
295, 303 (1999); New York v. Class, 475 U.S. 106, 112 (1986); South Dakota v. Opperman, 428 U.S.
364, 382 (1976). An automobile exception to the Fourth Amendment's warrant requirement,
allowing officers to search vehicles without first obtaining a warrant in certain limited situations, has
long been recognized by the Supreme Court. See Carroll v. United States, 267 U.S. 132, 149 (1925). 
Warrantless examinations of automobiles have been upheld in circumstances in which a search of
a home or office would not. Opperman, 428 U.S. at 382; Cardwell v. Lewis, 417 U.S. 583, 589-90
(1974); Chambers v. Maroney, 399 U.S. 42, 48 (1970). This exception is derived from both the
"ready mobility" of vehicles and the reduced expectation of privacy attached to vehicles. California
v. Carney, 471 U.S. 386, 391-92 (1985). Courts have recognized that the inherent mobility of
automobiles creates circumstances of exigency that make enforcement of the warrant requirement
impossible. Opperman, 428 U.S. at 367; Carroll, 267 U.S. at 153-54.

 This reduced expectation of privacy as to automobiles is further diminished by the
public nature of automobile travel. In Cardwell v. Lewis, the Supreme Court observed that:


One has a lesser expectation of privacy in a motor vehicle because its function is
transportation and it seldom serves as one's residence or as the repository of personal
effects. A car has little capacity for escaping public scrutiny. It travels public
thoroughfares where both its occupants and its content are in plain view.



417 U.S. at 590. The Court has recognized that, "as an everyday occurrence," vehicles are subjected
to police stops and examinations to enforce pervasive governmental regulations, Opperman, 428
U.S. at 368, and are "exposed to traffic accidents that may render all of their contents open to public
scrutiny." Houghton, 526 U.S. at 303. Recognizing still that drivers do not relinquish the
protections afforded by the Fourth Amendment and the right of individuals to be free of unreasonable
governmental intrusion, in Cardwell the Supreme Court observed that "insofar as the Fourth
Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone"
of the inquiry. 417 U.S. at 591. It is this touchstone of privacy that prohibits "unreasonable"
searches and seizures.

 The Supreme Court recognized that a warrantless search could still be constitutionally
reasonable under the community caretaking exception to the Fourth Amendment in Cady v.
Dombrowski, 413 U.S. 433 (1973). The Court reasoned:


Local police officers, unlike federal officers, frequently investigate vehicle accidents
in which there is no claim of criminal liability and engage in what, for want of a
better term, may be described as community caretaking functions, totally divorced
from the detection, investigation, or acquisition of evidence relating to the violation
of a criminal statute. 



Id. at 441. This case falls within the community caretaking exception to the Fourth Amendment's
warrant requirement as formulated by the Supreme Court in Cady and the Texas Court of Criminal
Appeals in Wright v. State, 7 S.W.3d 148, 153 (Tex. Crim. App. 1999). In Wright, the court of
criminal appeals addressed the issue of whether a deputy acted reasonably in stopping a vehicle out
of concern for the defendant's welfare, after the officer observed the defendant, a passenger, retch
out of an open rear window. Id. at 150. In its opinion, the court made clear that the proper inquiry
is whether the police officer acted reasonably under the totality of circumstances to render services
in performing his duty to "serve and protect." Id. at 151. As to whether the officer acted reasonably,
the court set forth four nonexclusive factors: (1) the nature and level of the distress exhibited by the
individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had
access to assistance independent of that offered by the officer; and (4) to what extent the
individual--if not assisted--presented a danger to himself or others. Id. at 152.

 In this case, the record demonstrates that appellant was seriously injured, located at
the scene of an automobile collision, and in need of medical attention; he was removed from the car
due to his injuries and transported to the hospital. At the time the officers executed the search
pursuant to the tip, appellant had been removed from the car and the car was in the custody of the
officers. Based on Tambunga's tip, the officer could infer--and the record supports--that the
information was relevant to the existing circumstances, either the accident investigation or
appellant's medical treatment. Indeed, Trooper McGuairt testified that he advised the emergency
personnel of the existence of the drugs. Given these facts alone, the officers' actions were justified
under the Wright four-factor test.

 The record also establishes that the privacy interest at stake here was minimal. The
automobile was demolished and inoperable; it was in the roadway, blocking a lane of the highway
and was soon to be towed from the accident scene. The testimony at the hearing established that
appellant made no requests or statements regarding the disposition of his vehicle. Appellant had no
reason to believe that his car would not be removed from the roadway. Law enforcement, fire, and
emergency personnel were on the scene handling the emergency; the DPS troopers were
investigating the cause of the accident as charged by law. See Tex. Transp. Code Ann. § 550.041. 
This a fortiori included following up on the information provided by Tambunga. The investigation
at the scene performed an important and routine administrative purpose.

 Even if the investigation of the accident scene was not justified by the community
caretaking exception, the State also contends that the search was supported by probable cause. We
review the totality of the circumstances to determine whether the search is supported by probable
cause. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). The circumstances are viewed in light of the
officer's knowledge and training on how to conduct searches and accident investigations. United
State v. McSween, 53 F.3d 684, 686 (5th Cir. 1995). "[A] 'trained officer draws inferences and
makes deductions . . . that might well elude an untrained person,' and evidence collected 'must be
seen and weighed not in terms of library analysis by scholars, but as understood by those versed in
the field of law enforcement.'" United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (quoting
United States v. Cortez, 449 U.S. 411, 418 (1981)). If the circumstances are such that a person of
reasonable caution would have probable cause to believe that either contraband or evidence of a
crime is likely to be found in the vehicle, then the officers are justified in searching the area
suspected of containing such evidence or contraband. United States v. Ross, 456 U.S. 798, 824
(1982); Powell v. State, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994); McNairy v. State, 835 S.W.2d
101, 107 (Tex. Crim. App. 1991) (exigent circumstances justifying a warrantless entry include (i)
rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance
or (ii) preventing the destruction of evidence or contraband).

 Sufficient probable cause can result from a disinterested informant's tip. See Gates,
462 U.S. at 230-31. Information from a citizen who advises an officer in person that an individual
present on the scene is committing a crime should be given serious attention and great weight by the
officer. United States v. Sierra-Hernandez, 581 F.2d 760, 763 & n.1 (9th Cir. 1978). Such
information given by a citizen, who is not connected with the police or who is not a paid informant,
is inherently trustworthy. Id. Several factors can enhance the reliability of an informant's tip. An
"explicit and detailed description of alleged wrongdoing, along with a statement that the event was
observed firsthand, entitles the informant's tip to greater weight than might otherwise be the case." 
State v. Adkins, 829 S.W.2d 900, 901 (Tex. App.--Fort Worth 1992, pet. ref'd) (citing Gates, 462
U.S. at 234). The tip is also more reliable when the informant "came forward personally to give
information that was immediately verifiable at the scene." Adams v. Williams, 407 U.S. 143, 146
(1972). A face-to-face informant who is located in close proximity to his own vehicle is more
credible because his car provides a method by which his identity may easily be traced, thereby
holding him accountable for his intervention. Sierra-Hernandez, 581 F.2d at 763 & n.1.

 As the sole judge of the credibility of the witnesses and the weight to be given their
testimony at the hearing, the trial court reasoned:

The officer was there. The officer had a right to be there, and if he comes up with
probable cause to believe that a crime occurred, he can investigate and he can search
if he has probable cause.


* * *



I'm inclined to believe that that's probably probable cause to investigate further in
this day and age and when an officer says that--has a witness tell him that he has
now--has knowledge that somebody secreted a plastic bag, when there are police
officers standing all the way around the vehicle, I think that's probable cause to
search right now . . . .


* * *



But that's where I'm leaning to believe that that officer has probable cause and
possibly a duty to investigate a possible crime in progress when it appears that
somebody just secreted--And you add to that the fact that the guy might have been
under the influence of drugs because an accident had just occurred and the fact that
there are police officers all the way around, the totality of the circumstances--if I'm
a cop, and I used to be one, I'm going to search there and see what's there.


* * *



You got probable cause to believe that contraband is there and there's a crime afoot
and they're about to tow the car away and you're not going to get a chance to check
again, I think the officers would have been negligent not to check it. 



 An abundance of evidence in the record supports the trial court's finding that Ray
Tambunga was a credible and reliable witness, and that probable cause existed. Tambunga was not
an anonymous informant. Rather, he had a face-to-face conversation with the officer, gave a sworn
statement of his report and remained on the scene, provided his name and contact information to the
officers, and subsequently appeared at the hearing to testify. Tambunga was in close proximity to
his own vehicle at the time of his report. These facts enhance Tambunga's reliability because they
make him accountable for his statements. It is undisputed that Tambunga was a disinterested
witness; he was not paid for the information, nor did he have any dealings with the police that would
give him a motive to lie. That the trial court found Tambunga credible is clear from the record. 
After Tambunga testified, the court observed: "We actually had a good Samaritan. I think that's the
first time I've ever heard testimony from a good Samaritan in the nine years that I've been on this
bench. You hardly ever see that." 

 Based on Tambunga's detailed eyewitness account, a reasonable officer, given his
training and experience, could infer that appellant's actions, in the context of the automobile
collision, were consistent with the illegal use of alcohol or narcotics. Tambunga's report provided
specific and articulable facts warranting the officer's belief that evidence of a crime or contraband
was hidden in the console of appellant's car and gave rise to probable cause which justified the
officer's warrantless search of the specified area.

 As the trier of fact at the hearing, the trial court is free to believe or disbelieve all or
any part of any witness's testimony. The trial court's decision here to admit the methamphetamine
into evidence was based on its evaluation of the credibility of the witnesses and the weight to be
accorded their testimony. Reviewing the evidence in the light most favorable to the trial court's
ruling, I conclude that the record supports the court's determination.

 In sum, I would hold that the district court properly admitted the evidence and did not
abuse its discretion in granting the State's motion to revoke appellant's probation.



 __________________________________________ Jan P. Patterson, Justice 

Before Chief Justice Law, Justices Patterson and Puryear

Filed: April 14, 2005

Publish

1. See also Wiede v. State, No. 03-03-00325-CR, 2005 Tex. App. LEXIS 452 (Tex.
App.--Austin Jan. 21, 2005, no pet. h.).